FREDERICK PAUL AND AILEEN M. PAUL, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15502–79.     Filed October 5, 1981.

*Kenneth W. Jennings, Jr., John M. Steel,* and *M. John Bundy,* for the petitioners.
*Thomas N. Tomashek,* for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $118,132 in petitioners' Federal income tax for 1975. The only issue for decision is whether an amount received by petitioner Frederick Paul as compensation for legal services is exempt from Federal income taxation pursuant to the provisions of the Alaska Native Claims Settlement Act, Pub. L. 92–203, 85 Stat. 688, 43 U.S.C. sec. 1601 et seq. (hereinafter the ANCSA or the act).[1]

### FINDINGS OF FACT

Petitioners Frederick Paul (hereinafter petitioner) and Aileen M. Paul filed a joint Federal income tax return for 1975

---

[1]All section references are to tit. 43, U.S. C. (1976 ed.), pertaining to the ANCSA, unless otherwise noted.

with the Internal Revenue Service Center, Ogden, Utah. At the time the petition was filed, they were legal residents of Seattle, Wash.

Petitioner is an attorney at law admitted to practice in the States of Alaska and Washington. He specializes in the practice of Indian law and holds himself out as an expert in that field. Petitioner is himself a one-quarter Tlingit Indian and is a member of the Tee-Hit-Ton Tribe of the Tlingit Nation. He is a "Native" within the meaning of the ANCSA and is duly enrolled pursuant to that act.[2]

In 1966, petitioner entered into an agreement to represent a group of Alaska Natives in seeking a settlement of certain claims against the United States and other parties.[3] He spent in excess of 5 years engaged in legal work on behalf of those Natives. For these services, petitioner was granted compensation under the ANCSA by the Chief Commissioner of the U.S. Court of Claims[4] in the amount of $275,095 in 1975. Pursuant

---

[2]Secs. 1602 and 1604 provide in pertinent part as follows:

Sec. 1602. Definitions

For the purposes of this chapter, the term—

\*     \*     \*     \*     \*     \*     \*

(b) "Native" means a citizen of the United States who is a person of one-fourth degree or more Alaska Indian (including Tsimshian Indians not enrolled in the Metlaktla [sic] Indian Community) Eskimo, or Aleut blood, or combination thereof. \* \* \*

Sec. 1604. Enrollment

(a) Eligible Natives; finality of decision

The Secretary [of the Interior] shall prepare within two years from December 18, 1971, a roll of all Natives who were born on or before, and who are living on, December 18, 1971. \* \* \*

(b) Residence; order of priority in enrollment of Natives not permanent residents; regional family or hardship enrollment

The roll prepared by the Secretary shall show for each Native, among other things, the region and the village or other place in which he resided on the date of the 1970 census enumeration, and he shall be enrolled according to such residence. Except as provided in subsection (c) of this section, a Native eligible for enrollment who is not, when the roll is prepared, a permanent resident of one of the twelve regions established pursuant to section 1606(a) of this title shall be enrolled by the Secretary in one of the twelve regions \* \* \*

(c) Election of enrollment in thirteenth region, if established, of Native nonresidents; dependent household members as bound

A Native eligible for enrollment who is eighteen years of age or older and is not a permanent resident of one of the twelve regions may, on the date he files an application for enrollment, elect to be enrolled in a thirteenth region for Natives who are non-residents of Alaska, if such region is established pursuant to section 1606(c) of this title. \* \* \*

[3]Petitioner had previously represented other Alaska Natives.

[4]Subsequent to the enactment of the ANCSA, the Chief Commissioner of the U. S. Court of

to the act, this sum was paid directly to petitioner from the Alaska Native Fund.[5]

---

Claims was redesignated as "chief of the trial division." Gen. Order No. 2 of 1973 of the U. S. Court of Claims, issued Aug. 1, 1973. For purposes of this opinion, he will be referred to as the Chief Commissioner.

[5]Secs. 1605 and 1619 provide in pertinent part as follows:

Sec. 1605. Alaska Native Fund

(a) Establishment in Treasury; deposits into Fund of general fund, interest, and revenue sharing moneys

There is hereby established in the United States Treasury an Alaska Native Fund into which the following moneys shall be deposited:

(1) $462,500,000 from the general fund of the Treasury, which are authorized to be appropriated according to the following schedule:

(A) $12,500,000 during the fiscal year in which this chapter becomes effective;

(B) $50,000,000 during the second fiscal year;

(C) $70,000,000 during each of the third, fourth, and fifth fiscal years;

(D) $40,000,000 during the period beginning July 1, 1976, and ending September 30, 1976; and

(E) $30,000,000 during each of the next five fiscal years, for transfer to the Alaska Native Fund in the fourth quarter of each fiscal year.

(2) Four percent interest per annum, which is authorized to be appropriated, on any amount authorized to be appropriated by this paragraph that is not appropriated within six months after the fiscal year in which payable.

(3) $500,000,000 pursuant to the revenue sharing provisions of section 1608 of this title.

\* \* \* \* \* \* \*

(c) Distribution of Fund moneys among organized Regional Corporations; basis as relative number of Native enrollees in each region; reserve for payment of attorney and other fees; retention of share in Fund until organization of corporation

After completion of the roll prepared pursuant to section 1604 of this title, all money in the Fund, except money reserved as provided in section 1619 of this title for the payment of attorney and other fees, shall be distributed at the end of each three months of the fiscal year among the Regional Corporations organized pursuant to section 1606 of this title on the basis of the relative numbers of Natives enrolled in each region. The share of a Regional Corporation that has not been organized shall be retained in the Fund until the Regional Corporation is organized.

Sec. 1619. Attorney and consultant fees

(a) Holding moneys in Fund for authorized payments

The Secretary of the Treasury shall hold in the Alaska Native Fund, from the appropriation made pursuant to section 1605 of this title for the second fiscal year, moneys sufficient to make the payments authorized by this section.

(b) Claims; submission

A claim for attorney and consultant fees and out-of-pocket expenses may be submitted to the Chief Commissioner of the United States Court of Claims for services rendered before December 18, 1971, to any Native tribe, band, group, village, or association in connection with:

(1) the preparation of this chapter and previously proposed Federal legislation to settle Native claims based on aboriginal title, and

(2) the actual prosecution pursuant to an authorized contract or a cause of action based upon a claim pending before any Federal or State Court or the Indians Claims Commission that is dismissed pursuant to this chapter.

\* \* \* \* \* \* \*

(d) Rules for receipt, determination, and settlement of claims

The Chief Commissioner or his delegate is authorized to receive, determine, and settle

Petitioner did not include the money paid to him from the Alaska Native Fund as compensation for legal services in the gross income reported on his Federal income tax return for 1975. In an attachment to that return, petitioner explained that under "the terms of 43 U.S. Code 1620, such payment is exempt because he is an enrolled native within the meaning of" the ANCSA. In the notice of deficiency, respondent determined that the money received by petitioner as compensation for legal services was includable in his gross income for 1975.

## OPINION

Sections 1 and 61 of the Internal Revenue Code of 1954 broadly provide that the income of every individual, from whatever source derived, is subject to the Federal income tax. Accordingly, the income of Indians, as well as other individuals, is taxable "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." *Commissioner v. Walker*, 326 F.2d 261, 263 (9th Cir. 1964), affg. in part and revg. in part 37 T.C. 962 (1962), and cases there cited; *Jourdain v. Commissioner*, 71 T.C. 980, 987 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980).

Relying upon section 1620(a), petitioner contends that the money paid to him from the Alaska Native Fund as compensa-

---

such claims in accordance with the following rules:

(1) No claim shall be allowed if the claimant has otherwise been reimbursed.

(2) The amount allowed for services shall be based on the nature of the service rendered, the time and labor required, the need for providing the service, whether the service was intended to be a voluntary public service or compensable, the existence of a bona fide attorney-client relationship with an identified client, and the relationship of the service rendered to the enactment of proposed legislation. * * *

\* \* \* \* \* \* \*

(4) The amounts allowed for services rendered shall not exceed in the aggregate $2,000,000, of which not more than $100,000 shall be available for the payment of consultants' fees. If the approved claims exceed the aggregate amounts allowable, the Chief Commissioner shall authorize payment of the claims on a pro rata basis.

\* \* \* \* \* \* \*

(e) Report to Congress; payment of claims; interest restriction

The Chief Commissioner shall certify to the Secretary of the Treasury, and report to the Congress, the amount of each claim allowed and the name and address of the claimant. The Secretary of the Treasury shall pay to such person from the Alaska Native Fund the amounts certified. No award under this section shall bear interest.

tion for legal services is exempt from taxation. That section provides as follows:

(a) Fund revenues exemption; investment income taxable

Revenues originating from the Alaska Native Fund shall not be subject to any form of Federal, State, or local taxation at the time of receipt by a Regional Corporation, Village Corporation, or individual Native through dividend distributions or in any other manner. This exemption shall not apply to income from the investment of such revenues.

Petitioner argues that this language creates a blanket exemption immunizing the entire Alaska Native Fund from Federal, State, or local taxation "to the extent that it is distributed to qualified natives—in any manner."

Respondent's position is that the purpose of the ANCSA was to settle aboriginal land claims. He contends that the exemption from taxation contained in section 1620(a) was intended to ensure that amounts paid to Natives for the settlement of such claims would be treated as a return of capital. Respondent argues that "there is no theory under which the compensation paid to petitioner Frederick Paul for legal services can be characterized as a return of capital" and that, therefore, such compensation is taxable.

We hold for respondent.

Read literally and wholly apart from certain other provisions of the ANCSA, section 1620(a) may well appear to exempt from taxation the moneys paid to petitioner from the Alaska Native Fund for legal services because he is a "Native" within the meaning of the act. However, "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459 (1892). See *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491, 494–495 (9th Cir. 1978) (construing sec. 1605(c) of the ANCSA), cert. denied 439 U.S. 954 (1978); *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 9–10 (1976); *Chemehuevi Tribe of Indians v. FPC*, 420 U.S. 395, 405 (1975). After considering section 1620(a) in conjunction with the other provisions of the ANCSA and in light of the purposes and legislative history of the act, we are convinced that it cannot be read and was not intended to exempt from taxation amounts paid out of the Alaska Native Fund as compensation for legal services.

When Alaska was purchased from Russia in 1867, the Treaty of Cession did not address the property rights of Native inhabitants.[6] It merely provided that the Natives would be subject to such laws as the United States might adopt with respect to the aboriginal tribes. Various pieces of legislation were subsequently enacted by Congress with respect to the public lands in Alaska, but these laws did not provide for the compensation of Natives for land and land rights expropriated by the United States or usurped by non-Natives. In 1935, the Congress enacted a jurisdictional statute authorizing a suit by the Tlingit and Haida Indians of southeastern Alaska, and they brought suit and obtained a judgment in the U.S. Court of Claims for the failure of the United States to respect and protect their rights. The Tee-Hit-Ton Indians, without the benefit of such a statute, sued but recovered nothing.

In December 1971, the Congress effected a legislative settlement by enacting the ANCSA, which was designed to provide "a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims."[7] Under this act, a cash payment of $962,500,000 was to be made over a period of years to the Alaska Native Fund, to be set up by the Treasury Department. Of that sum, $462,500,000 was to be paid from the Federal treasury and the remainder was to be derived from revenues from leasable minerals on public lands in Alaska, including lands which had been approved, and which were to be selected in the future, for transfer to the State of Alaska.[8] In addition to the cash payment, 40 million acres of land were to be transferred to Native corporations to be established pursuant to the act.[9] Future revenues from these lands are to be the property of the Native corporations.[10]

The act requires that all money in the Alaska Native Fund, "except money reserved as provided in section 1619 * * * for the payment of attorney and other fees," be distributed

---

[6]See *United States v. Atlantic Richfield Co.*, 435 F. Supp. 1009, 1014–1019 (D. Alaska 1977), for a good overview of the history of Alaska Native land claims.

[7]Sec. 1601(a).

[8]Secs. 1605, 1608.

[9]Secs. 1611, 1613.

[10]See sec. 1606(i).

quarterly among regional corporations organized pursuant to section 1606[11] and that such distribution be made "on the basis of the relative numbers of Natives enrolled in each region." Sec. 1605(c). Under section 1606(g), a regional corporation is authorized to issue 100 shares of stock to each Native enrolled in the region.[12] Such stock permits the holder to receive "dividends or other distributions" from the regional corporation. Sec. 1606(h)(1). Subsections (j), (k), (l), and (m) of section 1606 set forth certain requirements concerning distributions by a regional corporation to its stockholders and to village corporations[13] in the region. This entire scheme for the general distribution of the Alaska Native Fund makes it clear that all stockholder Natives were to benefit equally from it. See *Doyon, Ltd. v. Bristol Bay Native Corp.*, *supra* at 495. The basically equal distribution scheme makes no provision for payments of attorney fees.

Section 1619(a) provides, instead, that the "Secretary of the Treasury shall hold in the Alaska Native Fund * * * moneys sufficient to make the payments authorized" for attorney and other fees.[14] Claims for attorney fees for services rendered in

---

[11]Sec. 1606 provides in part as follows:

(a) Division of Alaska into twelve geographic regions; common heritage and common interest of region; area of region commensurate with operations of Native association; boundary disputes, arbitration

For purposes of this chapter, the State of Alaska shall be divided by the Secretary within one year after December 18, 1971, into twelve geographic regions, with each region composed as far as practicable of Natives having a common heritage and sharing common interests. * * *

\* \* \* \* \* \* \*

(d) Incorporation; business for profits, eligibility for benefits; provisions in articles for carrying out chapter

Five incorporators within each region, named by the Native association in the region, shall incorporate under the laws of Alaska a Regional Corporation to conduct business for profit, which shall be eligible for the benefits of this chapter so long as it is organized and functions in accordance with this chapter. The articles of incorporation shall include provisions necessary to carry out the terms of this chapter.

[12]Petitioner is a stockholder in the Sealaska Corp., one of the regional corporations organized under the act.

[13]Sec. 1607(a) requires the organization of village corporations by the Native residents of each village.

Hereinafter, the regional and village corporations will sometimes be referred to collectively as Native corporations.

[14]Attorney fees thus were to be paid from funds appropriated by Congress and reserved in the fund, rather than from revenues derived from the exploitation of leasable minerals on public lands. See note 5 *supra*, for the text of sec. 1619 insofar as it is pertinent here.

connection with the settlement of Native land claims were to be submitted to the Chief Commissioner of the U.S. Court of Claims within 1 year from the enactment of the ANCSA. Sec. 1619(b) and (c). Such claims were to be allowed—

based on the nature of the service rendered, the time and labor required, the need for providing the service, whether the service was intended to be a voluntary public service or compensable, the existence of a bona fide attorney-client relationship with an identified client, and the relationship of the service rendered to the enactment of proposed legislation.

Sec. 1619(d)(2). Those claims allowed and certified by the Chief Commissioner were to be paid by the Secretary of the Treasury from the moneys reserved from congressional appropriations included in the Alaska Native Fund for this purpose. Sec. 1619(e); see sec. 1619(a) and (d)(4). These special provisions for the payment of attorney fees, under which petitioner received the money in question, are entirely separate from the scheme for general distribution of the Alaska Native Fund to Native corporations and individual Natives.

Under section 1620(a), quoted above, revenues originating from the Alaska Native Fund are exempt from any form of taxation at the time of receipt by a Native corporation or individual Native "through dividend distributions or in any other manner." As previously noted, a literal reading of this section out of context would appear to exempt from taxation the money paid to petitioner under section 1619 as compensation for legal services. However, when read in light of the avowed purpose of the act (i.e., to settle Native land claims) and in context with the above-described provisions of the act concerning distributions to Native corporations and individual Natives, section 1620(a) refers only to amounts generally distributed to Native corporations and individual Natives for the settlement of land claims and not to amounts specially set aside and paid as compensation for legal services.

The tax exemption of section 1620(a) applies to revenues originating from the Alaska Native Fund received by "a Regional Corporation, Village Corporation, or individual Native." Pursuant to the scheme for distribution of the Alaska Native Fund, the entire amount of which constitutes the monetary compensation granted in settlement of Native land claims, all moneys except those set aside for payment of attorney and other fees must be distributed initially to the

regional corporations. Sec. 1605(c). Accordingly, the general population of Natives is eligible to actually receive amounts originating from the Alaska Native Fund, as individuals, only by way of "dividends or other distributions" from regional corporations or, possibly, village corporations. See secs. 1606 and 1607. Of course, amounts set aside in the treasury for the payment of attorney and other fees can be considered as having been constructively received by the Alaska Natives generally and then used to pay those fees. No doubt Congress intended that all amounts actually or constructively received by the Native people for the settlement of land claims would be exempt from taxation; however, we find nothing in the act to indicate a similar intent with respect to amounts received by an attorney for legal services simply because he happened to be a Native.

The legislative history of the act confirms that Congress did not intend to exempt amounts received as compensation for legal services. Compare *Train v. Colorado Pub. Int. Research Group, supra* at 10–11; *Chemehuevi Tribe of Indians v. FPC, supra* at 405; *Doyon, Ltd. v. Bristol Bay Native Corp., supra* at 495. With respect to individual Natives, there was no provision comparable to section 1620(a) in the House version of the bill leading to the ANCSA.[15] The House bill was amended in the Senate to provide that compensation paid to the Natives for the settlement of land claims would be exempt from taxation "either (1) at the time of receipt, or (2) upon distribution to any Native corporation or individual Native, whether directly by a per capita payment or indirectly through such corporation or corporations." S. Rept. 92–405, to accompany S. 35, at 59 (1971) (see sec. 27(a) and (b) of the Senate bill).[16] This provision was explained in S. Rept. 92–405, *supra* at 175–176, as follows:

Section 27 [of the Senate amendment] provides for the taxation or exemption from taxation of funds * * * granted to the Natives under this

---

[15]Sec. 6(m) of the House bill provided as follows (117 Cong. Rec. 37,064 (1971)):

"Moneys received by the [regional] corporation from the Alaska Native Fund shall not constitute taxable income to the corporation for any purpose. This exemption shall not apply to income from the investment of such moneys."

This provision was not discussed in the committee report on the House version of the bill. H. Rept. 92–523, to accompany H.R. 10367 (Pub. L. 92–203) (1971).

[16]The Senate amendment substituted the language of S. 35, 92d Cong., 1st Sess. (1971), for that of the House bill (117 Cong. Rec. 38,470 (1971)).

Act according to the general principle that the resources hereby made available represent compensation for the extinguishment of Native land claims by the operation of this Act, and that in accordance with general principles of taxation such compensation does not constitute taxable income.

This rationale does not apply to compensation for legal services. There is thus no question that, under the Senate amendment, amounts paid as compensation for legal services from the moneys reserved for that purpose would have been taxable even though received by a Native attorney.[17]

The conference report on the ANCSA states that section 1620 "parallels section 27 of the Senate amendment and with some deletions and modifications is substantially the same." Conf. Rept. 92–581, to accompany H.R. 10367 (Pub. L. 92–203), at 46 (1971). Further, that report states that section 1620 "provides for the tax treatment to be accorded * * * revenues granted by this Act *for the settlement of the Alaska Native claims* [emphasis added]." Conf. Rept. 92–581, *supra* at 46. Given this legislative history, we think it clear that section 1620(a) cannot be read so as to exempt from taxation the moneys paid to petitioner for legal services.

Contrary to the suggestion of petitioner, such a reading of section 1620(a) does not render nugatory any portion of the language to the effect that revenues from the Alaska Native Fund are exempt from taxation when received by an individual Native "through dividend distributions or in any other manner." We agree with petitioner that, under section 1620(a), money received from the Alaska Native Fund is exempt from taxation "to the extent that it is distributed to qualified natives—in any manner." However, the money in the form of the legal fees in question was not received by petitioner as part of a distribution to qualified Natives. Petitioner was paid for legal services rendered to the Natives and, as we read section 1620(a) in light of its purpose, context, and legislative history,[18] such payments do not constitute distributions made by

---

[17]Both the Senate amendment and the House version of the bill contained provisions for the payment of attorney fees substantially identical to sec. 1619 as enacted. These special provisions for the payment of attorney fees were included in order to limit such fees and "maximize the amount of the settlement to be received by the Natives." S. Rept. 92–405, to accompany S. 35, at 175 (1971). See H. Rept. 92–523, *supra* at 9.

[18]As stated by the Supreme Court in *Helvering v. Stockholms &c. Bank*, 293 U.S. 84, 93–94 (1934), the intention of the lawmaker controls in the construction of statutes, and—

way of dividends or in any other manner.[19] In short, the payments for legal services received by petitioner fall outside the scope of the tax exemption provided in section 1620(a).[20]

In reaching this conclusion, we have considered the general rule that doubtful expressions in statutes or treaties dealing with Indians are to be resolved in their favor. See, e.g., *DeCoteau v. District County Court*, 420 U.S. 425, 444 (1975); *Squire v. Capoeman*, 351 U.S. 1, 6–7 (1956). However, because we are here concerned with the application of section 1620(a) to an amount paid under a special provision for attorney fees, rather than under a provision pertaining to the Alaska Natives generally, we think that this rule operates with less force than it normally would. Further, the rule is at base "a canon of construction [and] is not a license to disregard clear expressions of * * * congressional intent." *DeCoteau v. District County Court, supra* at 447.

To reflect the foregoing,

*Decision will be entered for the respondent.*

that intention is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will. * * *

[19]Compare *Jourdain v. Commissioner*, 71 T.C. 980, 989 (1979), affd. per curiam 617 F.2d 507 (8th Cir. 1980).

[20]As previously noted, the amounts reserved in the Alaska Native Fund for the payment of attorney fees can be considered as having been constructively received by the Natives generally and then used to pay those fees. If petitioner's argument that such payments are exempt from tax when received by a Native attorney is correct, it would seem to follow that any amount received by a Native as payment for goods or services would be exempt from tax so long as the moneys could be traced to the Alaska Native Fund. This would clearly be an untenable result.