T.C. Memo. 1999-269


UNITED STATES TAX COURT


MIGUEL ESPINOZA AND MARIACLARIZA MONTOYA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3556-98.                    Filed August 10, 1999.


Miguel Espinoza Montoya and Mariaclariza Montoya, pro sese.

<u>Andrew R. Moore</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined deficiencies in, an
addition to, and an accuracy-related penalty on petitioners'

Federal income taxes as follows:

| Year | Deficiency | Addition to tax sec. 6651 | Accuracy-related penalty sec. 6662(a) |
|------|-----------|---------------------------|----------------------------------------|
| 1991 | $18,438 | $2,880 | $3,688 |
| 1992 | 868 | -- | -- |
| 1993 | 582 | -- | -- |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar. References to petitioner are to Miguel Espinoza Montoya.

After concessions,[1] the issues for decision are: (1) Whether petitioners realized capital gain in 1991 from the involuntary conversion of their property used in a trade or business. We hold they did to the extent set out below. (2) Whether petitioners are liable for the addition to tax for failure to timely file their 1991 Federal income tax return. We hold they are. (3) Whether petitioners are liable for the accuracy-related penalty pursuant to section 6662(a) either for

---

[1]Petitioners concede that they realized $18,517 of ordinary income in 1991. This is the total amount of the depreciation allowed previously on their involuntarily converted business property. See sec. 1245. The parties have resolved the issue of the amount of the Schedule F depreciation deduction that is allowable with respect to each of petitioners' 1991, 1992, and 1993 taxable years.

negligence or disregard of rules or regulations or for the substantial understatement of their 1991 income tax. We hold petitioners are liable for the penalty for negligence or disregard of rules or regulations.

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Kerman, California.

FINDINGS OF FACT

In the second half of the 1980's, petitioner was frequently away from home while working in the construction industry. Petitioner thought that it would be more economical to buy a used Greyhound bus and convert it into a motor home, which he would live in when he was working away from home, than to pay for commercial lodging and food. Accordingly, in March 1985, petitioners purchased a previously owned 1962 GMC Coach (bus) for $14,359.

The bus required repairs to the clutch and transmission, which were made shortly after purchase. The first item that petitioners purchased as part of the conversion process was a generator. During 1985, petitioner painted the body, completed the bedroom, and added wood paneling, lights, curtains, chairs, a couch, and bathroom plumbing, including holding tanks for potable

and waste water.  By the end of 1986, petitioner had replaced the front bumper, repainted the body, added a furnace, and completed the bathroom and the kitchen, including cabinets.

Petitioners placed the bus in service as a business vehicle in 1985.  Petitioners reported that they made improvements totaling $2,099 in 1985 and $2,883 in 1986.  Petitioners claimed deductions totaling $18,517 between 1985 and 1989 for depreciation, including a $2,099 deduction in 1985 pursuant to section 179.

In December 1990, the bus was destroyed by fire.  In early 1991, petitioners received $58,475 from their insurance provider for the replacement value of the converted bus.  Rather than repeat the conversion process on a different bus, petitioners used the insurance proceeds to buy land.

Petitioners filed their 1991 tax return on January 26, 1993. Petitioners did not request an extension of time to file their income tax return for the year in issue.  Petitioners never reported any gain or loss from the disposition of the bus.

OPINION

Issue 1.  Whether Petitioners Realized Capital Gain

Respondent determined that petitioners' adjusted basis in the bus was $824, and that petitioners realized $18,517 of section 1245 gain and $39,134 of capital gain from its disposition.  Petitioners concede the section 1245 gain; however,

they assert that they did not realize any capital gain from the conversion as their basis in the bus was equal to the amount of the insurance proceeds received. Petitioners' argument essentially is that their adjusted basis in their depreciable property is not decreased by depreciation that they did not claim as a deduction on their Federal income tax returns.

Respondent's determinations of fact are presumptively correct, and petitioners bear the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner testified that he constantly made improvements to the bus that he did not report or depreciate. Petitioners kept most of the receipts pertaining to the conversion in the bus. Thus, when the bus burned, the receipts were destroyed. However, petitioners were able to submit a few receipts for materials used in the conversion that total $2,231.02 for 1985[2] and $431.74 for 1986. At trial, petitioners submitted a list they prepared of the conversion items and their approximate costs. We found

---

[2]Petitioners submitted dated receipts for 1985 that totaled $561.27 and an undated receipt for $1,669.75. The undated receipt is from Kampers World and is made out to petitioner. One of the items listed on the receipt is a generator for $1,590. As petitioner testified that the first item that he purchased for the conversion was a generator, we have assigned this cost to the year 1985.

petitioner to be a credible witness and accept his testimony with respect to these items and their cost.[3]

Petitioners placed the bus in service in 1985. According to petitioner, most of the expenditures for the listed conversion items were made in 1985. The expenditures for the conversion items in that year total $21,400; however, on their return petitioners reported only $2,099 for improvements to the bus, which they deducted pursuant to section 179.

During 1986 petitioners expended a total of $4,600 to recondition the front bumper, install the furnace, repaint the body, and finish the kitchen and the bathroom. On their return for 1986, petitioners reported only $2,883 as the cost of improvements made to the bus in that year.

For purposes of calculating depreciation, petitioners' bus is 5-year property. See sec. 168(c)(2)(B), I.R.C. 1954 (as amended);[4] Rev. Proc. 83-35, 1983-1 C.B. 745, 746. It appears

---

[3]Petitioners' list included $780 for personal items that were in the bus when it burned. We do not consider this amount as it is not part of the basis of the bus. Petitioners' list also included an acquisition cost for the bus that is slightly higher than the amount stipulated. We reject the amount on petitioners' list as it is contrary to the stipulated acquisition cost.

[4]The bus was placed in service in 1985; thus, the method of accounting for the depreciation of the bus is the accelerated cost recovery system (ACRS) as provided by I.R.C. 1954 (as amended). Under ACRS, the depreciation deduction is calculated by multiplying the asset's unadjusted basis by the appropriate
(continued...)

from the returns that petitioners' method of accounting for depreciation was to recover the acquisition and improvement costs reported in 1985 separately from the improvement costs reported in 1986. Petitioners expended a total of $40,359 during 1985 and 1986 to acquire and convert the bus into a motor home; however, they claimed only $18,517 in total depreciation from 1985 through 1989.[5]

Pursuant to section 1011(a), the adjusted basis for determining the gain or loss from the sale or other disposition of property is the cost of the property determined under section 1012 adjusted as provided in section 1016. Section 1016(a)(2) provides, in effect, that the basis of the property shall be adjusted by the amount of depreciation previously allowed, but not less than the amount allowable, with respect to the property. Depreciation "allowed" is the amount actually deducted by the taxpayer and not challenged by the Commissioner. See Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 527 (1943). Consequently, the taxpayer's basis in a depreciable asset is

---

[4](...continued)
recovery percentage obtained from statutory tables for the taxable year in question. See sec. 168(b), I.R.C. 1954 (as amended).

[5]Petitioners did not claim a depreciation deduction for 1990, the year the motor home was destroyed. No ACRS deduction is allowable for the taxable year in which a taxpayer disposes of property that is not real property or low-income housing. See sec. 168(d)(2)(B), I.R.C. 1954 (as amended).

reduced by the greater of the amount of depreciation that is allowed or allowable in a tax year.

The expenditures that petitioners made in 1985 to acquire and improve the bus would have been recovered completely in 1989. See sec. 168(b)(1), I.R.C. 1954 (as amended). Although it may seem a harsh result as petitioners did not claim the full amount of depreciation allowable, these costs provide petitioners no basis in 1990. The expenditures that petitioners made in 1986 to improve the bus would have been recovered completely in 1990; however, as the bus was destroyed in that year, no deduction is allowed. See sec. 168(d)(2)(B), I.R.C. 1954 (as amended). Accordingly, we find that petitioners had an adjusted basis in the bus at the time of the involuntary conversion that is equal to the percentage of the costs incurred during 1986 allowable for recovery in 1990. That basis and the consequent amount of gain that petitioners must recognize can be determined by the parties in their Rule 155 calculations.

Issue 2. Addition to Tax for Failure To Timely File

Respondent determined that petitioners are liable for the addition to tax pursuant to section 6651(a)(1) for 1991. Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such a failure is due to reasonable cause and not due to

willful neglect.  The addition to tax is 5 percent of the amount required to be reported on the return for each month or fraction thereof during which such failure to file continues, but not to exceed 25 percent in the aggregate.  See sec. 6651(a)(1). Because petitioners are calendar year taxpayers, their 1991 return was due on April 15, 1992.  See sec. 6072(a).  Petitioners stipulated that they did not request an extension of time to file their 1991 income tax return and that it was filed on January 26, 1993. Petitioners' return was not timely filed.  Therefore, unless petitioners can show that their failure to timely file their return was due to reasonable cause and not due to willful neglect, respondent's determination will be sustained.

The term "reasonable cause" as set forth in section 6651(a)(1) has been defined as the exercise of ordinary business care and prudence.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a "conscious, intentional failure or reckless indifference."  See United States v. Boyle, 469 U.S. 241, 245 (1985).  The question of whether a failure to file a timely return is due to reasonable cause and not willful neglect is one of fact, on which petitioners bear the burden of proof. See Rule 142(a); Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir. 1964), affg. in part and revg. in part on another ground 37 T.C. 962 (1962); BJR Corp. v. Commissioner, 67 T.C. 111, 131 (1976).

Petitioner testified that he thought he was entitled to a tax refund, and that taxpayers who are entitled to a refund are not required to request an extension if they file after the due date. Petitioner's testimony included the statement "I don't know where I came up with that idea".

Petitioners' erroneous belief that no taxes are due does not constitute reasonable cause for the failure to timely file their income tax return. See Krieger v. Commissioner, T.C. Memo. 1993-347, affd. without published opinion 64 F.3d 657 (4th Cir. 1995); Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984). Under these circumstances, we conclude that petitioners' failure to timely file their income tax return for 1991 was not due to reasonable cause. Accordingly, we hold that the addition to tax pursuant to section 6651(a) is properly imposed.

Issue 3. Accuracy-Related Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for either negligence or disregard of rules or regulations or the substantial understatement of income tax. Section 6662 provides for the imposition of a penalty equal to 20 percent of the portion of an underpayment which is attributable to negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). For purposes of this section, the term "negligence" includes any

failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, to exercise ordinary and reasonable care in the preparation of a tax return, and to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. See sec. 6662(c).

The burden is on the taxpayer to prove the Commissioner's imposition of the penalty is in error. See Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264; LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Except for petitioner's testimony that he thought the insurance proceeds were not taxable because they were compensation for the casualty loss, petitioners did not address this issue at trial.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was a reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. See sec. 6664(c)(1).

The determination of whether a taxpayer acted with reasonable cause and good faith within the meaning of section

6664(c)(1) is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's efforts to assess the taxpayer's proper tax liability. See id.

In this case, petitioners were negligent and disregarded rules or regulations. Petitioners received $58,475 from the insurance company for their loss of the bus. The acquisition cost of the bus plus the cost of petitioners' listed items total no more than $40,359. Furthermore, petitioners claimed $18,517 of depreciation deductions, which decreased their basis in the bus.

Although the amount that petitioners received from the insurance company for the converted bus substantially exceeded their basis, even without considering the depreciation charges, petitioners never reported any portion of the insurance proceeds as income. In addition, although petitioner testified that he had no knowledge of tax law, petitioners apparently did not seek the advice of anyone who could have informed them of their proper tax liability.

It is evident from the record that petitioners did not make a reasonable attempt to comply with the internal revenue laws or to exercise ordinary and reasonable care in the preparation of their tax return. Finally, we do not find that there was

reasonable cause for petitioners' reporting position or that they acted in good faith.  Respondent is sustained on this issue.[6]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[6]Because we have found that petitioners are liable for the accuracy-related penalty for negligence or disregard of rules or regulations, we need not decide the issue of whether petitioners are liable for the penalty for the substantial understatement of income tax.  See sec. 1.6662-2(c), Income Tax Regs.