COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Freeman P. WALKER and Bernice
Walker, Respondents.

No. 18299.

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1964.

Rehearing Denied Feb. 12, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Carolyn R. Just and Jerome Fink, Attys., Dept. of Justice, Tax Div., Washington, D. C., for petitioner.

Cox & Cox and Z. Simpson Cox, Phoenix, Ariz., for respondents.

Before MERRILL and DUNIWAY, Circuit Judges, and TAYLOR, District Judge.

FRED M. TAYLOR, District Judge.

The Commissioner of Internal Revenue has petitioned us to review a decision of the Tax Court involving the tax liability of Freeman P. Walker,[1] a full-blooded

---

1. Bernice Walker, wife of Freeman P. Walker, is a party to this suit solely be-

cause she and her husband filed a joint return for the calendar year 1955.

noncompetent American Indian, on income received by him during the calendar year 1955. The decision of the Tax Court is reported at 37 T.C. 962. The Tax Court had jurisdiction under 26 U.S.C. § 6213(a) and this court has jurisdiction by virtue of 26 U.S.C. §§ 7482 and 7483.

Respondent, Freeman P. Walker, is a full-blooded noncompetent American Indian and a member of the Gila River Pima-Maricopa Indian Community. The jurisdiction of this community extends to all lands within the boundaries of the Gila River Indian Reservation in the State of Arizona. More than 5,000 Indians reside upon the reservation's 371,-000 acres of land, title to which is in the United States of America as trustee for the use and benefit of members of the Indian community. Reservation land is divided into two classes: land allotted to individual Indians for the use and benefit of the allotee; and common tribal land used for the benefit of the entire community and which comprises 73 per cent of land within the reservation. Revenue derived from common tribal land is held in trust by the United States of America for the use and benefit of the entire community.

Prior to 1938, management and operation of the reservation was handled directly by agents and representatives of the Bureau of Indian Affairs, Department of the Interior. In 1936, acting under the Wheeler-Howard Act,[2] Indians residing on the Gila River Indian Reservation adopted a constitution and by-laws which were approved by the Secretary of the Interior in 1937. The present community came into being in 1938 after ratification of a Charter issued by the Secretary. The Constitution provides for the establishment of voting districts from which representatives are elected by members of the community to serve on the Community Council. Council members are authorized, in turn, to elect officers to fill the offices of Governor, Lieutenant Governor, Secretary, and Treasurer. After 1938, the Council and officers exercised many of the functions of administering the reservation which, prior to the organization of the community, had been exercised directly by officials of the Bureau of Indian Affairs. However, title to all reservation lands continued to be in the United States of America as trustee and all revenues produced by farming common tribal lands, except an amount which the Secretary of the Interior permitted the community to hold for its miscellaneous use, was held in the United States Treasury in trust for subsequent appropriation and disbursement for the benefit of the entire community. The Charter prohibits the making of per capita distributions from these revenues.[3] The Constitution, Ar-

2. Act of June, 1934 (48 Stat. 984), as amended by Act of June, 1935 (49 Stat. 378); 25 U.S.C. § 461 et seq. This act provides for the organization of tribes into incorporated tribal communities. The purpose of the Act, as stated in an official publication of the United States Department of the Interior, entitled "Federal Indian Law" (1958), p. 270, is "to enable tribes and tribal members to become self-sufficient by their own efforts in lines of endeavor congenial to native tastes and talents, and to make possible the transfer to the organized tribes of responsibility for services hitherto performed by the Federal Government."

The Charter of the community provides:

"1. In order to further the economic development of the Gila River Pima-Maricopa Indian Community of the Gila River Reservation in Arizona by conferring upon the said Community certain corporate rights, powers, privileges and immunities; to secure for the members of the Community an assured economic independence; and to provide for the proper exercise by the Community of various functions heretofore performed by the Department of the Interior, the aforesaid Community is hereby chartered as a body politic and corporate of the United States of America, under the Corporate name "The Gila River Pima-Maricopa Indian Community."

3. The Charter provides as follows:
"8. The Community may issue to each of its members a nontransferable certificate of membership evidencing the equal share of each member in the assets of the Community and may use all profits of corporate enterprises or in-

ticle V, Section 2(a), authorized the Community Council, subject to review by the Secretary of the Interior, "to appropriate money out of available community funds for salaries of community officials."

In 1955, $340,000 in revenue was derived from common tribal land. This amount consisted principally of proceeds from the sale of crops grown thereon by the Indians; amounts received from leases to non-Indian farmers, and from other miscellaneous sources. From this revenue the respondent Walker received $4,200 in the calendar year 1955, which was disbursed and paid to him by the Community Council. The Tax Court found that this money was paid to him "in connection with his services as the elected Treasurer" of the community. The Treasurer's duties are prescribed by Charter and By-Laws.[4]

It is contended by the petitioner that the Tax Court erred [5] in concluding (1) that the income in question was not taxable to the respondent, and (2) that no addition to tax could be imposed under section 6651(a) of the Internal Revenue Code of 1954 because the delay in filing the return was due to reasonable cause.

We shall consider these contentions seriatim.

▆▆ A general Act of Congress applying to all persons includes Indians and their property interests. Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L. Ed.2d 584 (1960). Sections 1 and 61(a) of the Internal Revenue Code of 1954 subject the income of "every individual" to tax, and include income "from any source whatever", that is not elsewhere specifically excluded. Because the Internal Revenue Code is a general Act of Congress, it follows that Indians are subject to payment of federal income taxes, as are other citizens, unless an exemption from taxation can be found in the language of a Treaty or Act of Congress. Squire v. Capoeman, 351 U.S. 1, 6, 76 S. Ct. 611, 615, 100 L.Ed. 883 (1956); Superintendent of Five Civilized Tribes for Sandy Fox, Creek No. 1263 v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L. Ed. 1517 (1935); Choteau v. Burnet,

come over and above sums necessary to defray corporate obligations for the establishment of a reserve fund, the construction of public enterprises, the expense of Community government, the needs of charity, or other corporate purposes. No per capita distribution of any assets of the Community shall be made."

4. The Charter provides:
"* * * The Treasurer of the Community shall be the custodian of all moneys which come under the jurisdiction or control of the Community Council. He shall pay out money in accordance with the orders and resolutions of the Council and no disbursements shall be made without the signature or approval of the Treasurer. He shall keep accounts of all receipts and disbursements and shall make written reports of same to the Community Council at each regular and special meeting. He shall be bonded in such an amount as the Council by resolution shall provide, such bond to be approved by the Commissioner of Indian Affairs. The books of the Treasurer shall be audited at the direction of the Council or of the Commissioner of Indian Af-

fairs, and shall be open to inspection by members of the Community or duly authorized representatives of the Government at all reasonable times."
The Bylaws provide: (Article I, § 3)
"The treasurer of the community having furnished a bond satisfactory to the council and to the Commissioner of Indian Affairs, shall have the custody of all moneys belonging to the community. Payment for such bond shall be made out of available funds of the community."

5. Petitioner's specifications of error are as follows:
"1. The Tax Court erred in holding that a full-blooded noncompetent Indian and his wife, who live on the Gila River Reservation, are not taxable on $4,200 the husband received for services in 1955 as the elected treasurer of the Gila River Pima-Maricopa Indian Community, where the money was distributed out of Government-trusteed tribal funds derived from the tribal lands of the reservation.
"2. An addition to tax should be imposed under Section 6651(a) of the Internal Revenue Code of 1954 inasmuch as the taxpayers delayed filing a return for 1955 until May 29, 1958."

264

283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931).

In reaching a conclusion of nontaxability the Tax Court did not refer to language in any Treaty or Act of Congress which exempts the income in question from taxation. The brief of respondents contains no such reference and this court has been unable to find any such reference.

Respondents contend that the income was "directly derived from tribal lands." They rely upon Squire v. Capoeman, supra. The Tax Court made no such finding or conclusion and the case of Squire v. Capoeman is inapposite.

■■ Respondent Walker earned the income as an employee of the Gila River Pima-Maricopa Indian Community by performing the duties of elected Treasurer as prescribed by the Community Charter and By-laws. If, under the law, the income of an organization is exempt from taxation, it does not follow that the income received by an employee as compensation for service rendered to such organization is also exempt from taxation. Since there is no exemption from taxation prescribed in the language of a Treaty or Act of Congress, we conclude that this income is taxable and that respondents are liable to pay the tax imposed by the Internal Revenue Code for the calendar year 1955. To this extent the decision of the Tax Court must be . reversed. If it is desirable that the income of an Indian be exempt from taxation under the circumstances existing here, such exemption should be provided by an Act of Congress and not by a court.

■■ The Tax Court decided that under the circumstances here the delay by respondents in filing a return was "due to reasonable cause and not due to willful neglect." We agree. Whether the late filing of a return is due to reasonable cause or willful neglect is a question of fact. Schmidt v. C.I.R., 272 F.2d 423, 425 (9th Cir., 1959); Ferrando v. United States, 245 F.2d 582, 587–588 (9th Cir., 1957). No additions to a tax can be imposed under Section 6651(a)

of the Internal Revenue Code when the delay in filing a return is due to reasonable cause. We affirm the decision of the Tax Court that no additions to the tax assessed against respondents can be imposed under Section 6651(a).

Accordingly, the decision of the Tax Court is reversed in part and affirmed in part.