**William H. HOPTOWIT,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 82-7419.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1983.

Decided June 28, 1983.

Jonathan Cohen, Washington, D.C., for respondent-appellee.

R. Wayne Bjur, Yakima, Wash., for petitioner-appellant.

Before HUG, POOLE, and NORRIS, Circuit Judges.

HUG, Circuit Judge:

The question presented by this case is whether payments to a Yakima Indian for service as a Tribal Council Member are exempt from federal income taxation under the Treaty with the Yakimas. The Tax Court, 78 T.C. 137, ruled that these payments are taxable. We affirm.

## I

Appellant William Hoptowit is a noncompetent,[1] enrolled member of the Yakima Indian Nation (the "Tribe").

In November 1975, Hoptowit was elected by the Tribe to the Yakima Tribal Council. The Tribal Council is the Tribe's governing body. Council Members handle the Tribe's business on a day-to-day basis. Serving as a Council Member is not a full-time job, but involves a significant expenditure of time.

Council Members receive per diem payments for time spent on Council matters. The per diem amount is determined annually by the Tribe, and the payments are made from funds originally held in trust by the United States for the Tribe's benefit. Approximately 90 percent of the funds held in trust by the United States is generated from "trust resources," primarily the sale of timber from reservation land. The remaining ten percent of Tribal funds is from interest on money deposited with the Bureau of Indian Affairs.

In 1976, Hoptowit received $18,000 in per diem payments for his work as a Council Member. Taxes were not withheld from these payments. Hoptowit did not report this $18,000 as taxable income.

After an audit, the Commissioner of Internal Revenue determined a deficiency of almost $40,000 for 1976. Only a portion of this deficiency is attributable to the per diem payments. The remainder is attributable to income from a smokeshop operated by Hoptowit on the Yakima Reservation.

Hoptowit petitioned the Tax Court for a redetermination of his tax liability. The Tax Court held that neither the per diem payments nor the smokeshop income is exempt from federal income taxation. Hoptowit appeals the Tax Court's ruling only as to the per diem payments.

## II

As a general rule, Indians are subject to federal income taxation, like other United States citizens, unless exempted by a treaty or an act of Congress. *Fry v. United States,* 557 F.2d 646, 647 (9th Cir. 1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978). Although ambiguous statutes and treaties are to be construed in favor of Indians, they are not to be construed to grant tax exemptions unless they contain language which can reasonably be so construed. *United States v. Anderson,* 625 F.2d 910, 913 (9th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). The intent to exempt from taxation must be clearly expressed. *Squire v. Capoeman,* 351 U.S. 1, 6, 76 S.Ct. 611, 614–15, 100 L.Ed. 883 (1956); *Anderson,* 625 F.2d at 913.

Hoptowit's claim that the per diem payments are exempt from taxation is based on the Treaty with the Yakimas of 1855 (the "Treaty"). 12 Stat. 951. In that Treaty, the Yakimas ceded their claims to certain lands in what was then the Washington Territory, excepting the tract that is now the Yakima Indian Reservation. The paragraph on which Hoptowit relies concerns the land set aside for the reservation. It reads as follows:

> All which tract shall be set apart, and, so far as necessary, surveyed and marked

---

1. The term "noncompetent Indian," as used here, refers to one who holds allotted land under a trust patent and who may not alienate

or encumber that land without the consent of the United States. *See Stevens v. Commissioner,* 452 F.2d 741, 742 n. 1 (9th Cir.1971).

out, *for the exclusive use and benefit of said confederated tribes and bands of Indians,* as an Indian reservation; nor shall any white man, excepting those in the employment of the Indian Department, be permitted to reside upon the said reservation without permission of the tribe and the superintendent and agent. And the said confederated tribes and bands agree to remove to, and settle upon, the same, within one year after the ratification of this treaty. In the mean time it shall be lawful for them to reside upon any ground not in the actual claim and occupation of citizens of the United States; and upon any ground claimed or occupied, if with the permission of the owner or claimant.

12 Stat. at 952 (emphasis added).

Hoptowit contends that the "exclusive use and benefit" language expresses a tax exemption as clearly as was possible a half century before the enactment of federal income taxation. He argues that this language guarantees the Tribe's right to distribute the income from the reservation's resources for the exclusive benefit of its ·members. He further argues that the word "exclusive" precludes taxation of these distributions to Tribal members.

The Commissioner interprets the Treaty as giving the Yakima Indians the right to the exclusive use and benefit of reservation lands, but not as protecting the income of tribal members from taxation. If the Treaty gives rise to a tax exemption, the Commissioner argues, it is limited to income produced directly by reservation land.

The Commissioner relies in part on cases which hold that although the income from certain Indian lands may be tax exempt, the payment of that income to tribal members in exchange for services is a taxable event. These cases interpret *Squire v. Capoeman,* 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), which held that under the General Allotment Act of 1887, 25 U.S.C. §§ 331–358, income derived directly from certain Indian lands held in trust by the United States is exempt from taxation. *Id.* at 9, 76 S.Ct. at 616. In *Commissioner v.*

*Walker,* 326 F.2d 261 (9th Cir.1964), this court held that even if certain income was tax exempt under *Squire v. Capoeman,* a tribal member could be taxed when that money was used to compensate him for his services as the elected tribal treasurer. *Id.* at 264; *see also Fry v. United States,* 557 F.2d 646 (9th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978); *Jourdain v. Commissioner,* 71 T.C. 980, 989 (1979), *aff'd,* 617 F.2d 507 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).

■ Although in *Walker* the asserted tax exemption was based on the statute interpreted in *Squire v. Capoeman,* and Hoptowit bases his claim on a treaty, the line drawn by *Walker,* between income derived directly from the land and the use of that income to compensate tribal members for services, is equally applicable here. The Treaty language on which Hoptowit bases his claim gives to the Tribe the exclusive use and benefit of *the land* on which the reservation is located. Thus, as in *Walker,* any tax exemption created by this language is limited to the income derived directly from the land. It does not extend to the use of that income to compensate Hoptowit for his service as a Tribal Council Member.

■ Hoptowit also contends that the per diem payments are not wages, but are symbols of the Tribe's appreciation. He argues that the payments are traditional "distributions of tribal wealth in the nature of gifts for services appreciated by the Yakima people." The Tax Court's finding that the payments were compensation for service as a Council Member was amply supported under the clearly erroneous standard and thus must be upheld on appeal. The finding that the per diem payments were intended as compensation for service as a Council Member precludes the argument that the payments were gifts, *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), and the argument that the payments represent Hoptowit's pro rata share of tax exempt Tribal income. *See Walker,* 326 F.2d at 264.

The Tax Court is AFFIRMED.