**Helen S. KIRSCHLING,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 83–4063.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1984.

Decided Oct. 29, 1984.

Dennis J. Whittlesey, Whittlesey & O'Brien, P.C., Washington, D.C., for plaintiff-appellant.

Carleton D. Powell, Mary L. Fahey, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FLETCHER and FARRIS, Circuit Judges, and CRAIG,[*] District Judge.

FARRIS, Circuit Judge:

This case presents a question of first impression: is a noncompetent Indian's gift to a non-Indian of the proceeds from timber lands allotted under the General Allotment Act of 1887 subject to federal gift tax? The district court ruled on summary judg-

---

[*] The Honorable Walter Early Craig, Senior United States District Judge for the District of Arizona, sitting by designation.

1. The term "noncompetent Indian" refers to one who holds allotted land under a trust patent and

ment that the transfer would be subject to gift tax. We reverse.

## FACTS

Helen S. Kirschling is a noncompetent[1] Indian who in 1976 was the beneficial owner of several allotments of timber land on the Quinault Indian Reservation in the state of Washington. The United States held legal title to the land in trust pursuant to the General Allotment Act of 1887 and subsequent extension enactments. In 1976 she applied for and obtained five "special allotment timber cutting permits" that permitted her to remove certain timber from the land. Under the terms of the special permits, she could arrange her own sale and have the proceeds paid directly to herself or deposited to her Individual Indian Money Account ("IIMA") with the Bureau of Indian Affairs.

Kirschling arranged to have the timber sold to a third party and received a certified check for $2,280,702 payable to the Bureau of Indian Affairs. She deposited the check in her IIMA at the Bureau on September 3, 1976. Sometime prior to October 1, 1976, Kirschling told Duane Grandorff, a non-Indian, that she intended to make a gift to him. Based on a conversation with the superintendent of the Bureau, she understood that the BIA would only issue a check from her IIMA that was payable to her. On October 1, 1976, Kirschling withdrew $850,000 from her account, receiving two checks payable to herself in the amounts of $750,000 and $100,000. On October 4, 1976, Kirschling converted the $750,000 check into cashier's checks payable to Grandorff and gave him the cashier's checks.

Kirschling reported the transfer on her 1976 gift tax return, stating that the transfer was not taxable because it was a gift of Indian trust funds. The Internal Revenue Service disagreed and assessed a deficiency

---

who may not alienate or encumber that land without the consent of the United States. *See Hoptowit v. Commissioner,* 709 F.2d 564, 565 n. 1 (9th Cir.1983).

of $174,112.50. Kirschling paid the deficiency and brought this action for a refund. The IRS also assessed a deficiency against Grandorff on the ground that the transfer was income for past services rendered. Grandorff's suit in the Tax Court has been stayed pending resolution of this case.

Kirschling moved for summary judgment on the ground that a gift of proceeds of allotted property is exempt from federal gift tax. The government responded with a motion for partial summary judgment, arguing that to the extent the transfer was a gift, the Allotment Act did not exempt it from federal gift tax. The district court granted a partial summary judgment motion for the government and later set a trial date for the issue of whether the transfer was a gift or compensation. Prior to trial, the government moved for summary judgment on the grounds that the Internal Revenue Code bars Kirschling from recovering on a theory different from that set forth in her refund claim. The district court granted summary judgment in favor of the government.

## DISCUSSION

Sections 2501(a)(1) and 2502(d) of the Internal Revenue Code impose a tax on "any individual" who transfers property by gift. 26 U.S.C. §§ 2501(a)(1), 2502(d). These provisions apply generally to all persons. Indians are thus subject to the gift tax unless exempted by treaties or other legislation. *See Federal Power Commission v. Tuscarora Indian Nation,* 362 U.S. 99, 115–17, 80 S.Ct. 543, 552–53, 4 L.Ed.2d 584 (1960); *Squire v. Capoeman,* 351 U.S. 1, 6, 76 S.Ct. 611, 614, 100 L.Ed. 883 (1956); *Hoptowit v. Commissioner,* 709 F.2d 564, 565 (9th Cir.1983). Kirschling claims that her transfer of allotment proceeds is exempt from gift tax under the General Allotment Act of 1887, ch. 119, 24 Stat. 388 (1887) (codified as amended at scattered sections of 25 U.S.C.). The district court's interpretation of the tax exemption accorded allotment proceeds under the Act is a conclusion of law which we review *de novo*. *See Turner v. Prod,* 707 F.2d 1109, 1114

(9th Cir.1983), *cert. granted sub nom., Heckler v. Turner,* — U.S. —, 104 S.Ct. 1412, 79 L.Ed.2d 739 (1984).

The General Allotment Act gave the executive branch the authority to survey and allot parcels of land to individual Indians. 25 U.S.C. § 331. Its "primary purpose" was the "speedy assimilation of the Indians." *Blackfeet Tribe of Indians v. Montana,* 729 F.2d 1192, 1195 (9th Cir.1984) (en banc) *cert. granted,* — U.S. —, 105 S.Ct. 80, 83 L.Ed.2d 28 (1984). Section 5 of the Act provides that the United States will hold the allotted land in trust for the Indian for twenty-five years. At the expiration of this period, which can be extended at the discretion of the President, the United States is to convey the land by patent "discharged of said trust and free of all charge or incumbrance whatsoever." 25 U.S.C. § 348. Under section 6, the Secretary of the Interior may, whenever he is "satisfied that any Indian allottee is competent and capable of managing his or her affairs," issue a patent in fee simple. "[T]hereafter all restrictions as to sale, incumbrance, or *taxation* of said land shall be removed...." 25 U.S.C. § 349 (emphasis added).

In *Squire v. Capoeman,* 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), the Supreme Court held that the Act exempts noncompetent Indians from capital-gains tax on the timber proceeds from allotted land. The Court found it implied in sections 5 and 6 that an allotment is free from all taxes until a patent in fee is issued. The Court then held that the tax exemption for allotted lands "extends to the income derived directly therefrom." *Capoeman* 351 U.S. at 9, 76 S.Ct. at 616 (quoting F. Cohen, Handbook of Federal Indian Law 265) (footnote omitted). Preservation of the trust and the income derived directly therefrom was found necessary to protect the Indian's interest and thereby promote his or her assimilation. *Capoeman,* 351 U.S. at 9, 76 S.Ct. at 616.

No decision that considers whether the holding in *Capoeman* applies to exempt a noncompetent Indian's gift of allot-

ment proceeds from *gift* tax has been brought to our attention. Our search revealed none. The Court in *Capoeman* held that "until such time as the [fee simple] patent is issued, the allotment shall be free from *all* taxes." *Id.* at 8, 76 S.Ct. at 616 (emphasis added). Gift tax does not fall within nor is it analogous to any of the exceptions to the holding.[2] In *Stevens v. Commissioner*, 452 F.2d 741, 744 (9th Cir. 1971), we said that *Capoeman* is not to be interpreted narrowly and that its holding is not limited to capital-gains tax. Further, ambiguous statutes that contain language that can reasonably be interpreted to confer a tax exemption for Indians should be construed in their favor. *Hoptowit*, 709 F.2d at 565; *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). We therefore conclude that *Capoeman* applies.

Our reasoning finds support in the cases that have exempted the transfer of allotted land and allotment proceeds from federal estate tax. *See Asenap v. United States*, 283 F.Supp. 566 (W.D.Okla.1968); *Nash v. Wiseman*, 227 F.Supp. 552 (W.D.Okla. 1963). *See also Oklahoma Tax Commission v. United States*, 319 U.S. 598, 610–11, 63 S.Ct. 1284, 1289–90, 87 L.Ed. 1612 (1943) (allotted lands specifically exempted from direct taxation by the states under a 1928 allotment act are also exempt from state estate taxes); *Kirkwood v. Arenas*, 243 F.2d 863 (9th Cir.1957) (land allotted under the General Allotment Act would be exempt from California estate tax if the Act applied, but trust allotments exempted

from California inheritance tax in any event under the Mission Indian Act.)

■ Estate and gift tax are construed *in pari materia* since the purpose of the gift tax is to prevent the avoidance of estate tax by an inter vivos transfer of property. *Harris v. Commissioner*, 340 U.S. 106, 107, 71 S.Ct. 181, 182, 95 L.Ed. 111 (1950). *See* F. Cohen, Handbook of Federal Indian Law 399 (1982 ed.) ("Taxation of gifts of allotted or other trust or restricted property presumably depends on the same principles [as those for estate tax.]") (footnote omitted). *See also* Rev.Rul. 67–284, 1967–2 C.B. 55 (exempting land allotted under the General Allotment Act and income directly derived therefrom from gift and estate tax). Under the rationale of *Capoeman* we find that allotted lands and allotment proceeds are exempt from gift tax.

■ Next we must consider whether Kirschling's transfer of $750,000 to Grandorff, a non-Indian, was exempt from gift tax. It is undisputed that the $750,000 in timber proceeds was income "derived directly" from Kirschling's allotted land, and therefore subject to the holding in *Capoeman*. The fact that Kirschling received a check for $750,000 drawn in her favor from her IIMA and then converted it into cashier's checks payable to Grandorff does not change the analysis. Kirschling at all times intended the withdrawal to go directly from the trust account to Grandorff. The critical question is thus whether Kirschling has been issued a patent in fee. *See Capoeman*, 351 U.S. at 7–8, 76 S.Ct. at 615.

---

**2.** The tax exemption in *Capoeman* applies only to allotted lands and income directly derived from allotted lands. It does not extend to income derived from the investment of allotment proceeds. *Capoeman*, 351 U.S. at 9, 76 S.Ct. at 616. Nor does it extend to income derived from common tribal land that has not been allotted. *Jourdain v. C.I.R.*, 617 F.2d 507, 508 (8th Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); *Holt v. Commissioner*, 364 F.2d 38, 41 (8th Cir.1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967). *See Fry v. United States*, 557 F.2d 646, 648 (9th Cir.1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct.

722, 54 L.Ed.2d 754 (1978); *Commissioner v. Walker*, 326 F.2d 261, 264 (9th Cir.1964). The exemption protects an allottee from an incumbrance on his or her allotted property, and it does not exempt an Indian taxpayer's income directly derived from allotted property for which he does not own the beneficial interest. *United States v. Anderson*, 625 F.2d 910, 914–15 (9th Cir.1980).

This case involves a gift of allotment proceeds, not an investment of them. The Government concedes that the gift derived from proceeds from allotted land in which Kirschling owned the beneficial interest.

The government argues that Kirschling received the timber proceeds in fee simple when the BIA removed the money from her IIMA and issued a check for $750,000 payable to her. The flaw in the government's analysis is that it ignores the statutory provisions for a transfer in fee simple.

A patent in fee is issued under section 5 at the expiration of the twenty-five year trust period, which has been extended "until otherwise directed by Congress." 25 U.S.C. § 462. Since the statutory trust period has not expired, a patent in fee has not been issued under section 5.

A patent in fee may be issued under section 6 upon the Secretary's determination that the Indian is competent. Section 6 provides in relevant part:

> [T]he Secretary of the Interior may, in his discretion ... *whenever he shall be satisfied that any Indian allottee is competent* and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to ... taxation of said land shall be removed....

25 U.S.C. § 349 (emphasis added). *See also Capoeman*, 351 U.S. at 10, 76 S.Ct. at 617 (proceeds are preserved for Indian until he is declared competent); *Bonds v. Sherburne Mercantile Co.*, 169 F.2d 433, 435 (9th Cir.1948) (when the issuance of the fee patent is admitted, "it is presumed that [the officers] performed their official duties and that the Secretary of the Interior had found to his satisfaction that [the applicant] was then 'competent'"). We find that a determination of competency is necessary for the issuance of a patent in fee simple under section 6.

It is undisputed that Kirschling has never been issued a certificate of competency. The fact that the BIA issued Kirschling a special timber cutting permit that enabled her to negotiate the sale of the timber on her allotted land and permitted her to withdraw $850,000 from her IIMA is not deter-minative of her competency. *See United States v. Nez Perce County*, 267 F. 495, 498 (D. Idaho 1917) ("[T]here is a presumption, conclusive upon the courts, that until the restriction against alienation is removed in the manner provided by law, either through the lapse of time or the positive action of the Secretary of the Interior, the allottee continues to be an 'incompetent' Indian.").

There is no determination of competency made prior to the withdrawal of IIMA funds. Upon application, any adult Indian is entitled to withdraw funds from his or her IIMA. 25 C.F.R. § 115.3 (1984). In contrast, the statute contemplates that a noncompetent Indian who applies for a fee simple patent must make some showing to the Secretary that she is capable of managing her own affairs. *See Larkin v. Paugh*, 276 U.S. 431, 434–35, 48 S.Ct. 366, 367, 72 L.Ed. 640 (1928) (describing how a noncompetent Indian applying for a fee simple patent set forth his education, experience, and habits to show that he could manage his own affairs).

■ The government also argues that Kirschling's transfer does not fall within the holding in *Capoeman* because she transferred the proceeds to a non-Indian. We find no basis upon which to distinguish transfers to Indians from transfers to non-Indians. The burden of the gift tax falls on Kirschling—the noncompetent Indian donor. The purpose of the Act is to provide the allottee with unencumbered property when he or she becomes competent. *See United States v. Anderson*, 625 F.2d at 914. The critical issue thus is not whether the transferee is an Indian or non-Indian, but rather whether the allottee received the property in fee simple either under section 5 or section 6.

A noncompetent Indian's gift of allotment proceeds to a non-Indian is exempt from federal gift tax.[3]

Reversed and remanded.

---

3. Since we find in Kirschling's favor on other grounds, we need not decide whether Kirschling is not liable for the gift tax because the transfer was compensation. *See Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948, 950–51 (9th

Cir.1974). Nor do we decide whether the transfer was in fact a gift or compensation.