ESTATE OF EARL G. DAVIS, DECEASED, AND RUTH DAVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Davis v. Commissioner
Docket No. 3563-78
United States Tax Court
T.C. Memo 1984-574; 1984 Tax Ct. Memo LEXIS 97; 48 T.C.M. (CCH) 1493; T.C.M. (RIA) 84574; October 30, 1984. Richard M. Berley,Mason D. Morisset, and Robert L. Pirtle, for the petitioners. Thomas N. Tomashek, for the respondent. WILBUR MEMORANDUM OPINION WILBUR, Judge: TheCommissioner determined the following deficiencies and additions to tax in the petitioners' Federal income taxes: Sec. 6653(a) [1]
Sec. 6651(a)
Year
Deficiency
Addition to Tax
Addition to Tax
1972
$22,760
$1,138
$1,129
1973
36,383
1,819
9,073
1974
23,691
1,185
1975
9,698
485
*98 After concessions the only issue remaining for decision is whether income earned from the retail sale of cigarettes and tobacco products (smokeshop income) by a member of the Shoalwater Bay Indian Tribe is subject to Federal income taxation. This case was submitted under Rule 122, [2] all facts having been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Ruth Davis was married to petitioner Earl Davis until his death on July 10, 1975 for all periods relevant to this case. Petitioner Ruth Davis resided in Tokeland, Washington when the petition in this case was filed. Prior to his death Earl Davis was allotted land on the Quinaielt Indian Reservation. This allotment is now held in trust by the United States for the benefit of his children. On December 14, 1971, Earl Davis became an enrolled member of the Shoalwater Bay Indian Tribe. In contrast, petitioner Ruth Davis is a non-Indian and has no tribal affiliation with either the Quinaielt Indian Tribe or the Shoalwater Bay Indian Tribe. Petitioners operated the Davis Smokeshop *99 (smokeshop) within the exterior boundry of the Shoalwater Bay Indian Reservation. This land is held in trust by the United States for the Shoalwater Bay Indian Tribe (the Tribe) and was subject to a possessory assignment in favor of Earl Davis up until his death. Petitioner was authorized and licensed to operate the smokeshop by the Shoalwater Bay Tribal Council to whom petitioner paid license fees pursuant to tribal ordinances. The net profit from retail sales of the smokeshop for the years in question is: Year
Net Income
1972
$55,291
1973
80,168
1974
61,306
1975
[3] 34,637
During the years in issue, the fair rental value of the land upon which the smokeshop was situated was $5,000. This figure is based upon the value of the property for use in the operation of a smokeshop or other similar commercial enterprise, the highest and best use of this particular property. For all years in controversy, petitioners filed joint Federal individual income tax returns, omitting earnings from the smokeshop. In the notice of deficiency, the *100 Commissioner determined that smokeshop income is includable in gross income. Section 61 provides that income "from whatever source derived," is subject to Federal income taxation. It is well established that the income of Indians is taxable under this section, "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." Commissioner v. Walker,326 F.2d 261, 263 (9th Cir. 1964); Jourdain v. Commissioner,71 T.C. 980 (1979), affd. 617 F.2d 507 (8th Cir. 1980); Hoptowit v. Commissioner,78 T.C. 137 (1982), affd. 709 F.2d 564 (9th Cir. 1983). The mere fact that petitioners are Indians will not preclude them from being liable for the payment of income tax. Choteau v. Burnet,283 U.S. 691 (1931); Superintendent v. Commissioner,295 U.S. 418 (1935). In order to prevail petitioners must point to "express exemptive language in some statute or treaty" showing that they need not include amounts in their gross income. United States v. Anderson,625 F.2d 910, 913 (9th Cir. 1980); Karmun v. Commissioner,82 T.C. 201, 204 (1984). *101 [4] See Welch v. Helvering,290 U.S. 111 (1933). Petitioners have failed to show an express exemption in any Treaty or Act of Congress. Thus, we must agree with respondent that smokeshop income constitutes taxable income under section 61. Petitioners' primary contention is that the Treaty with the Quinaielt, 12 Stat. 971, can be construed to provide an exemption from Federal income taxation within Article 12, which states: "The said tribes and bands finally agree not to trade at Vancouver's Island or elsewhere out of the dominions of the United States." In urging us to find a tax exemption in Article 12, petitioners argue that a treaty must be read in light of the objectives which it is intended to carry out and that interpretation of the treaty language must be as it would naturally be understood by the Indians. The Supreme Court has determined that the intended purpose of Indian Treaties is to provide homes for Indians in an atmosphere which is economically *102 self sustaining. McClanahan v. Arizona State Tax Commission,411 U.S. 164, 174 (1973); United States v. Shoshone Tribe,304 U.S. 111, 117-118 (1938); Alaska Pacific Fisheries v. United States,248 U.S. 78, 87-89 (1918); Winters v. United States,207 U.S. 564, 577 (1908); The Kansas Indians,72 U.S. (5 Wall.) 737, 752, 754 (1866). In looking at the Treaty with the Quinaielt, supra and its intended purpose, we are not persuaded that Federal income taxation of smokeshop income is contrary to that goal. As we have stated before, the finding of taxability may reduce profits retained by petitioners, but it does not interfere with trade rights granted under the treaty.[5]Cross v. Commissioner, 83 T.C.    , (Sept. 27, 1984). *103 The language of Article 12 deals with trading and geographical restrictions that were placed on the Indians. We decline to set out a detailed historical account of the background and circumstances surrounding the "western Washington treaties" except to say that we have carefully examined all evidence before the Court. Having done this we are not convinced that Article 12 was ever intended as more than a geographical restriction on trade. In no way can this language, considering the circumstances of its adoption, be construed as an express exemption from Federal income taxation. Interpreting the treaty as it would naturally be understood by the Indians has brought us to the conclusion that the treaty language, specifically that of Article 12, is void of ambiguity. Read in the most favorable light to petitioners, Squire v. Capoeman,351 U.S. 1 (1956); Stevens v. Commissioner,452 F.2d 741 (9th Cir. 1971), and considering the historical setting, Article 12 represents no more than a restriction on trade. In no way can we find that the Indians could have understood this provision as a guarantee against the imposition of Federal income *104 tax by the United States. [6] See generally Cross v. Commissioner,supra.
We accept the argument that ambiguities in treaties or statutes should be construed in favor of Indians. Squire v. Capoeman,supra at 6-7; Stevens v. Commissioner,supra at 744. "But it is one thing to say that courts should construe treaties and statutes dealing with Indians liberally, and quite another to say that, based on those same policy considerations which prompted the canon of liberal construction, courts themselves are free to create favorable rules." Fry v. United States,557 F.2d 646, 649 (9th Cir. 1977). The fact remains that we are unable to grant, by implication, *105 a tax exemption for petitioners. Mescalero Apache Tribe v. Jones,411 U.S. 145, 156 (1973); Fry v. United States,supra at 649; Jourdain v. Commissioner,71 T.C. 980, 990 (1979), affd. 617 F.2d 507 (8th Cir. 1980). Petitioners also try to gain an exemption through the application of the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (1982). [7] However, even if the General Allotment Act did apply, it fails to provide an exemption from income tax in this case. [8] In Squire v. Capoeman,supra at 9, the Supreme Court concluded that there exists within the General Allotment Act, an exemption from taxation of income from land held in trust by the United States, if such income is "directly derived" from the land. Quite clearly income from land is not generally exempt, but only income "directly derived" from the land. Petitioners' smokeshop income does not fall within this narrow exemption, and we have repeatedly held such income taxable. See Hoptowit v. Commissioner,78 T.C. 137 (1982); Cross v. Commissioner, 83 *106 T.C.     (Sept. 27, 1984); Hale v. United States,579 F. Supp. 646 (E.D. Wash. 1984); Critzer v. United States,220 Ct. Cl. 43, 597 F.2d 708 (1979). [9] It is well established that smokeshop income is not within the narrow tax exemption under the General Allotment Act, supra.
*107 Alternatively, petitioners ask us to exclude the rental value of the land from their smokeshop income under the theory that this is rental income "directly derived" from the land within the meaning of Squire v. Capoeman,supra.[10] This argument has been carefully considered and rejected in Cross v. Commissioner,supra. See also Hale v. United States,supra. We continue to reject this argument.
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The net income for 1975 represents smokeshop income up to July 10, 1975 when petitioner Earl Davis died.↩
4. Cf. Swiger v. Commissioner,T.C. Memo. 1984-228↩ (where the Court restated the requirement of the presence of express language to exempt smokeshop income from taxation.)
5. The treaty discussed in Cross v. Commissioner, 83 T.C.    , (Sept. 27, 1984), was the Treaty of Medicine Creek of 1854, 10 Stat. 1132. The Treaty of Medicine Creek, supra↩ and the Treaty of the Quinaielt, 12 Stat. 971 were among several treaties negotiated by the then territorial governor Isaac Stevens with the western Washington tribes. All of these treaties contain identical language, and most pertinent to this case is the fact that all of the "western Weshington treaties" contain the same Article 12. See Treaty of Point No Point, 12 Stat. 933, Treaty of Point Elliot, 12 Stat. 927; Treaty with the Makahs, 12 Stat. 939.
6. It is hard to create even an implied exemption from the Treaty provisions when one considers that, at the time the Treaty with the Quinaielt was entered into, the Federal income tax did not yet exist. Posin, Federal Income Taxation, section 1.01, p. 1 (1983). Therefore, it could not have been within the contemplation of the parties at the time of making the treaty, to have a geographical trade limitation also limit the taxing authority of the United States.↩
7. The purpose of the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (1982), is to protect Indians' interest in their land and "to prepare the Indians to take their place as independent, qualified members of the modern body politic." Board of Commissioners v. Seber,318 U.S. 705, 715 (1943). The allotted parcels are held in trust until a time when such property is transferred to the allottee, "in fee, discharged of said trust and free of all charge or encumbrance whatsoever." General Allotment Act, supra, 25 U.S.C. sec. 348↩. Thus, the General Allotment Act seeks to preserve the value of the allotted land until such time as the allottee is judged competent to handle his own affairs.
8. The land in question has not been "allotted" to the petitioners. It was merely subject to a possessory assignment in petitioners' favor. Because the General Allotment Act, supra↩ does not provide an exemption in this case, we need not determine if land subject to a possessory assignment should be treated as an allotment for purposes of application of the General Allotment Act. 9. Cf. Comenout v. Commissioner,T.C. Memo. 1982-40; Swiger v. Commissioner,T.C. Memo. 1984-228; Gord v. Commissioner,T.C. Memo. 1984-517↩.
10. Normally we would not consider the issue of imputed rent because petitioners first raise it in their reply brief However, the parties did stipulate to the fair rental value of rent and the only purpose of this stipulation was to raise this specific issue. Additionally, respondent had a previous opportunity to fully brief this issue in Cross v. Commissioner,↩ 83 T.C.     (Sept. 27, 1984), a companion case presenting identical facts.