**Kip R. RAMSEY, d/b/a Tiin–Ma Logging Co., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CY–99–3070–WFN.

United States District Court, E.D. Washington.

Nov. 2, 2000.

Michael Martin Megaard, Lukins & Annis, Spokane, WA, Timothy Roy Weaver, Cockrill & Weaver, PS, Yakima, WA, for Plaintiff.

James P. Connelly, U.S. Attorney's Office, Spokane, WA, W. Carl Hankla, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, Defendant.

## ORDER

WM. FREMMING NIELSEN, District Judge.

On October 30, 2000, the Court heard oral arguments on both Plaintiff's and Defendant's Motion for Summary Judgment. Timothy Weaver represented the Plaintiff; W. Carl Hankla represented Defendant. The Court has reviewed the Motions and briefing, has considered the oral arguments, and is fully informed. For the reasons stated below, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion.

## I. BACKGROUND

Plaintiff lives in White Swan, Washington, and owns Tiin–Ma Logging Company, a sole proprietorship. Plaintiff filed this action seeking a refund of federal excise taxes, penalties, and interest based on heavy vehicle use taxes paid pursuant to 26 U.S.C. § 4481 and diesel fuel excise taxes paid pursuant to 26 U.S.C. § 4041. An 1855 Treaty between the United States Government and the Yakama Indians provides Plaintiff's basis for seeking this refund of federal taxes. Plaintiff successfully challenged the similar highway-related taxes imposed by the state of Washington. *Yakama Indian Nation v. Flores*, 955 F.Supp. 1229 (E.D.Wash.1997), *aff'd sub nom. Cree v. Flores*, 157 F.3d 762 (9th Cir.1998). Defendant argues that the Court in the instant case must apply a different, more stringent standard for determining whether the Treaty exempts Plaintiff from the federal taxes at issue.

Plaintiff on September 15, 2000, filed a Motion for Summary Judgment; on the same date, Defendant also filed a Motion for Summary Judgment. Both parties agree this case should be decided as a matter of law.

## II. FACTS

The following facts can be found in the parties' statements of material facts (Ct. Recs. 14 and 20), submitted pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1. The Court deems admitted any material fact stated by a moving party and not rebutted by a non-moving party. LOCAL RULE 56.1(d).

***Plaintiff's Logging Business on the Yakama Reservation.*** Plaintiff is an enrolled member of the Yakama Indian Tribe who conducts a logging business involving tribal resources on the Yakama Reservation. Plaintiff hauls timber cut on tribal land to off-Reservation mill sites, using

trucks that run on diesel fuel, exceed 55,-000 pounds gross vehicle weight, and travel on public highways. The logs are "tribal goods," as Judge McDonald and the Ninth Circuit used that term in Plaintiff's prior case challenging state taxes and fees.

***Plaintiff's Payment of Federal Excise Taxes.*** Under the Internal Revenue Code, 26 U.S.C. § 4481, Plaintiff has been required to pay federal tax on the use of any trucks exceeding a gross vehicle weight of 55,000 pounds. Under 26 U.S.C. § 4041, Plaintiff also must pay federal tax on the diesel fuel used by his trucks. Failure to pay such taxes could subject Plaintiff to monetary penalties, prosecution, or impoundment of his trucks. Between 1986 and 1993, Plaintiff paid $460,702.55 in federal excise taxes, penalties, and interest under 26 U.S.C. § 4481 and § 4041. Plaintiff now seeks a refund for that amount plus interest.

***1855 Yakama Treaty.*** Article III, paragraph 1 of the 1855 Treaty between the United States Government and the Yakamas provides as follows:

> And provided, That, if necessary for the public convenience, (953) roads may be run through the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right in common with citizens of the United States, to travel upon all public highways.

12 Stat. 951, 953 (1855). Several other passages from the Treaty recognize the Yakamas' right to travel on roads outside the Reservation and take goods to market. In the mid–1800s, the Yakamas communicated regularly with the Puget Sound tribes and routinely traveled to trade with neighboring Indians and to hunt buffalo. During the Treaty negotiations between the United States Government and the Yakamas, the parties never discussed the possibility that the Yakamas' right to access public highways could be conditioned upon payment of any fees or taxes. The Yakamas in 1855 highly valued their continued free access to travel throughout the region; the Yakama Chiefs who signed the Treaty placed great importance on preserving that right. The primary Government representatives in the Treaty negotiations, Governor Isaac Stevens and General Joel Palmer, recognized the Yakamas' desire and need to travel freely.

## III. STANDARD OF REVIEW

***Summary Judgment Standard.*** The purpose of summary judgment is to avoid unnecessary trials when no dispute exists over the facts before the Court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982). The Court must construe all facts and all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Marks v. United States*, 578 F.2d 261, 263 (9th Cir.1978). The non-moving party may use affidavits, depositions, answers to interrogatories, and admissions to do this. *Celotex*, 477 U.S. at

323–24, 106 S.Ct. 2548. A court must enter summary judgment against a party who fails to make a showing sufficient to establish an essential element of a claim, even if genuine factual disputes exist regarding other elements of the claim. *Id.* at 322–23, 106 S.Ct. 2548. No issue for trial exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Thus, "a scintilla of evidence" in support of the non-moving party's position will not suffice. *Id.* at 252, 106 S.Ct. 2505.

## IV. DISCUSSION

 *Federal Taxes Generally Applicably to Indians.* Both Plaintiff and Defendant agree that the central issue in this case is whether the 1855 Treaty between the Yakama Indian Tribe and the United States Government exempts Plaintiff from federal excise taxes. As a general rule, federal taxes apply to Indian tribes and their members unless an exemption can be found in the language of a treaty or federal statute. *Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz,* 691 F.2d 878, 881 (9th Cir.1982); *United States v. Anderson,* 625 F.2d 910, 913 (9th Cir.1980). Such an exemption must be definitely expressed where the general language of the tax statute is broad enough to include the subject matter. *Id.* at 913; *Choteau v. Burnet,* 283 U.S. 691, 693–94, 51 S.Ct. 598, 75 L.Ed. 1353 (1931). For example, in *Choteau,* the Supreme Court found that a statute taxing the income of "every individual" did include Indians since the Court found no intent to exclude the Indians in the tax statute, a treaty, or any federal law. 283 U.S. at 693–94, 51 S.Ct. 598.

 *Standard for Determining Federal Tax Exemptions.* While Plaintiff and Defendant agree that federal taxes apply to Indians in lieu of treaty or statutory language granting an exemption, the parties disagree on the appropriate standard the Court should apply in determining whether the Treaty contains such an exemption. Both parties acknowledge that the Ninth Circuit looks for "express exemptive language" in a treaty or federal statute before finding an exemption to a generally applicable federal tax. *United States v. Anderson,* 625 F.2d 910, 913 (9th Cir.1980). However, Plaintiff argues that the Court may examine extrinsic evidence showing how the Indians interpreted the Treaty at the time it was signed. Defendant, on the other hand, argues that if the Treaty does not include language specifically referring to taxation or encumbrances, then the Court may proceed no further in determining whether a federal tax exemption exists and must find for the Government.

Plaintiff urges the Court to follow the precedent set in *Yakama Indian Nation v. Flores,* 955 F.Supp. 1229 (E.D.Wash.1997), *aff'd sub nom. Cree v. Flores,* 157 F.3d 762 (9th Cir.1998), a case initiated by the same Plaintiff as the instant case and based on the same facts now before the Court. In that case, Plaintiff claimed that Washington state's truck license and permit fees violated his rights under the Yakama Treaty. Plaintiff prevailed on his claim after the district court conducted a factual investigation into the historical context and intent of the parties to the Treaty. 955 F.Supp. 1229. The Ninth Circuit affirmed the district court's finding that "the Treaty clause must be interpreted to guarantee the Yakamas the right to transport goods to market over public highways without payment of fees for that use." 157 F.3d at 769. Plaintiff argues that the Court must follow that precedent here.

Defendant, on the other hand, asserts that a different, more stringent standard applies to challenges of federal taxes, not the standard in *Cree.* Defendant argues

that the Treaty must on its face contain "express exemptive language" before the Court may proceed to examine any extrinsic evidence. For support, Defendant cites cases evaluating state taxes and fees in light of Indian treaties. In *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), for example, the Court held that the pervasive federal regulatory scheme over timber operations on the Apache Reservation precluded the state of Arizona from assessing excise taxes, even though no "express congressional statement" indicated that Congress intended to preempt the state taxes. 448 U.S. at 151, 100 S.Ct. 2578. Defendant also cites *Confederated Tribes of Warm Springs v. Kurtz,* 691 F.2d 878 (9th Cir.1982), which recognized that while the Supreme Court's preemption analysis in *White Mountain* did not require an express statement, "to imply an exemption from federal taxes ... we must find 'express exemptive language' in a statute or treaty." 691 F.2d at 882. Defendant also points to a footnote in an earlier Ninth Circuit opinion in *Cree v. Waterbury,* 78 F.3d 1400 (9th Cir.1996), in which the court seems to hint that the standard for finding exemptions to federal fees might be different than that for finding exemptions to state fees. ("The State presents no authority for this court to find that the state-imposed truck fees should be judged according to the standard for federal fees." 78 F.3d at 1402, n. 4.)

Defendant misinterprets the case law, however. The less stringent standard to which Defendant refers generally applies only to state taxes imposed on reservations, inside "Indian country." The *White Mountain* and *Cree* cases say just that: "In the case of 'Indians going *beyond* reservation boundaries, ... a nondiscriminatory state law' is generally applicable in the absence of 'express federal law to the contrary.'" *White Mountain,* 448 U.S. at 144, n. 11, 100 S.Ct. 2578, *quoting Mescale-*

*ro Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (emphasis added). In *Yakama Indian Nation,* the Ninth Circuit also recognized this standard. "State tax laws applied to Indians outside of Indian country, such as those at issue here, are presumed valid 'absent *express* federal law to the contrary.'" 78 F.3d at 1403 (emphasis added). While Defendant desperately attempts to distinguish the test used in *Cree* from that required in the case now before the Court, Defendant's argument fails. The court in *Cree* did in fact apply the standard requiring "express" language— the same standard to be applied here—in order to find a tax exemption. Furthermore, while the Ninth Circuit will not *create* a tax exemption without such language, the Circuit also has not required treaty language explicitly to reference a federal tax exemption before finding one. Defendant attempts to distinguish the Ninth Circuit's standard from other circuits, such as the federal circuit, which apply a test permitting exemptions to be implied where a treaty's language can reasonably be construed as conferring such an exemption. In fact, the Ninth Circuit routinely uses the term "express exemptive language" interchangeably with the phrase "language which can reasonably be construed to confer an exemption." *Karmun v. Commissioner,* 749 F.2d 567, 570 (9th Cir.1984). *See also, e.g., Dillon v. United States,* 792 F.2d 849, 853 (9th Cir.1986); *Hoptowit v. Commissioner,* 709 F.2d 564, 565 (9th Cir. 1983); *Anderson,* 625 F.2d 910, 913. The case law contradicts Defendant's assertion that the Ninth Circuit's requirement of "express exemptive language" provides a bright line rule that includes only language which unambiguously provides an exemption.

For example, in *Hoptowit,* the plaintiff challenged his income tax assessment on per diem payments for his work as a tribal

council member. 709 F.2d at 565. The court interpreted the 1855 Treaty with the Yakamas—the same treaty at issue in this case—and looked specifically at a clause guaranteeing "exclusive use and benefit" of the reservation land for the Yakamas. *Id.* at 566. While the court denied the plaintiff's claim that this clause should exempt him from tax on income derived from services he provided, the court also noted in dicta that such clause presumably *would* exempt income derived directly from the land. *Id.* Even though the generally worded Treaty language mentioned nothing of taxes or exemptions specifically, the Ninth Circuit recognized that such language still could be sufficient to find a tax exemption.

Similarly, in *Kirschling v. United States,* 746 F.2d 512 (9th Cir.1984), the Ninth Circuit did not limit its inquiry to a literal interpretation of the statutory language at issue. The court found that an Indian's gift to a non-Indian of the proceeds from timber lands was not subject to federal gift tax. 746 F.2d at 513. In finding this tax exemption, the court interpreted the General Allotment Act of 1887, which provided that the United States would hold allotted land in trust for Indians for a certain period of years until the Government issued such land in fee simple to the Indians. The Act and its amendments provided that after such fee was issued, all restrictions on the sale, encumbrance, or taxation of the land should be removed. *Id.* at 514. Even though the issue in *Kirschling* centered on proceeds from land not yet issued in fee simple, the court interpreted the statute in favor of the Indian and found that a tax exemption would be consistent with the purpose of the Act and should be granted. *Id.* at 514–15.

These Ninth Circuit cases follow *Squire v. Capoeman,* 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), a landmark Indian tax

exemption case in which the Supreme Court interpreted treaty and statutory language to determine whether the proceeds of a timber sale on allotted reservation lands were subject to the federal capital gains tax. 351 U.S. at 2, 76 S.Ct. 611. The Court noted that tax exemptions should be clearly expressed, and then examined the underlying purpose of the General Allotment Act, as well as subsequently passed legislation; based on its interpretation of those things, the Court construed the Act in favor of the plaintiff Indians. The Court held that even though the Act's challenged provision was not "expressly couched" in terms of non-taxability, it nonetheless was sufficient to confer a tax exemption. *Id.* at 5, 76 S.Ct. 611.

Courts, even when applying the requirement of "express exemptive language," routinely construe treaty language according to canons of Indian law interpretation and find tax exemptions. If, as Defendant argues, the rule in fact were a bright line requiring unambiguous language granting an exemption, then the many cases holding that ambiguities should be construed in favor of Indians would be meaningless. The Court, therefore, rejects Defendant's argument that the *Cree v. Flores* case should not be relied on here.

■ *Meaning of the Yakama Treaty.* This Court need not undertake the effort of construing Article III of the Yakama Treaty because clear case law, based on the very facts now before the Court, already has established the proper interpretation of the specific Treaty provision at issue here. In *Yakama Indian Nation v. Flores,* 955 F.Supp. 1229 (E.D.Wash.1997), *aff'd sub nom. Cree v. Flores,* 157 F.3d 762 (9th Cir.1998), the court made the following finding:

> Article III, paragraph 1, of the Treaty With the Yakamas, when viewed in its historical context, unambiguously re-

serves to the Yakamas the right to travel the public highways without restriction.... Article III, paragraph 1 of the Treaty provides the Yakama Indian Nation with the right to travel on all public highways without being subject to any licensing and permitting fees related to the exercise of that right while engaged in the transportation of tribal goods.

955 F.Supp. at 1262. While the claim before the court in *Cree* challenged only state fees and taxes, neither the district court nor the Ninth Circuit made any effort to limit the Treaty interpretation to apply only to a claim for a state tax exemption. In fact, as discussed above, the court applied the same test, requiring a finding of "express" language, that applies here. Furthermore, although the court did not directly address federal taxes, the court seemingly was aware of the potential application to federal taxes. The court referenced federal fees in its finding that "[a]t the time of the Treaty the United States did not charge fees for travel on its public highways in the Washington Territory." *Id.* at 1263. All evidence supports the conclusion that the district court and Ninth Circuit's interpretation of the Treaty should apply here.

*Abrogation of Treaty Rights.* In the alternative, Defendant argues that even if the Treaty did exempt the Yakamas from excise taxes, Congress has abrogated any such exemption. To support this argument, Defendant cites a tax code not at issue in this case. Defendant concedes that the tax statutes being challenged by Plaintiff—26 U.S.C. §§ 4041(1)(a) and 4481(1)—show no evidence of abrogating treaty rights; in fact, those statutes fail even to mention Indians. Defendant instead argues that another statute granting certain tax exemptions to Indian tribal governments—Internal Revenue Code § 7871—implicitly abrogates the Treaty rights Plaintiff asserts here. Defendant's argument, however, goes against clear precedent that abrogation of Treaty rights must be done clearly and explicitly.

The intent to abrogate or modify an Indian treaty "is not to be lightly imputed to the Congress." *Menominee v. United States,* 391 U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697, *quoting Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox Ltd.,* 291 U.S. 138, 160, 54 S.Ct. 361, 78 L.Ed. 695 (1934). In fact, Congress' intention to abrogate rights under an Indian treaty must be "clear and plain." *United States v. Dion,* 476 U.S. 734, 738, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986). Congress must have "actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty." *Id.* at 740, 106 S.Ct. 2216. In *Dion,* the Supreme Court held that the Eagle Protection Act abrogated Indian treaty rights to hunt eagles. The Court based its conclusion on specific language in the Act that allowed the Secretary of the Interior to grant exceptions for Indian tribes' religious purposes, as well as legislative history showing that Congress specifically considered Indian ceremonies and customs related to eagles.

Defendant cites *Washington v. Confederated Tribes & Bands of the Yakima Indian Nation,* 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979), to support the argument that Congress need not show a specific intent to abrogate. However, in *Confederated Tribes,* the Supreme Court examined a jurisdictional law of general applicability to Indian country, which by its nature applied to Indian tribes. Section 7871, which Defendant claims has abrogated the Yakama Treaty rights raised by Plaintiff, does apply to tribal governments but fails to address the type of activity for which Plaintiff, an individual Indian, seeks an exemption. In *United*

*States v. Farris,* 624 F.2d 890 (9th Cir. 1980), also cited by Defendant, the court recognized the presumption that Congress does not intend to abrogate treaty rights when it passes general laws unless it makes specific reference to a treaty or Indians. 624 F.2d at 893.

 While Congress did reference Indian tribal governments in 26 U.S.C. § 7871, it did not discuss excise taxes as applied to tribal members, and it failed to mention Indians at all in the general tax laws Plaintiff challenges here. Furthermore, as Plaintiff points out, the legislative history behind § 7871 shows an intent to benefit, not harm, Indian tribes. S. REP. No. 97–646 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4580. Therefore, the Court rejects Defendant's argument that the Yakamas' Treaty rights have been abrogated.

## V. CONCLUSION

While federal tax laws generally apply to Indians and other citizens alike, Plaintiff here relies on express language in the Yakama Treaty to support his position that under that Treaty, he should be exempt from federal taxes that burden his use of public highways to take tribal goods to market. The Court is bound by the district court and Ninth Circuit's interpretation of the Treaty in *Cree v. Flores,* and believes that the same standard applied in that case should apply here. Furthermore, because Defendant fails to present sufficient evidence that Congress abrogated the Treaty rights at issue here, the Court finds that Plaintiff's rights under the Yakama Treaty exempt him from paying taxes imposed by 26 U.S.C. §§ 4481 and 4041 as a prerequisite to using public highways to take tribal goods to market.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment filed September 15, 2000, **Ct. Rec. 12,** is **GRANTED.**

2. The District Court Executive is directed to **ENTER JUDGMENT in favor of Plaintiff in the amount of $460,702.55.**

3. Defendant's Motion for Summary Judgment filed September 15, 2000, **Ct. Rec. 18,** is **DENIED.**

The District Court Executive is directed to file this Order and provide copies of this Order and the Judgment to counsel and to **CLOSE THIS FILE.**