RICHARD PETER PAUL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paul v. Commissioner
Docket No. 31244-88
United States Tax Court
T.C. Memo 1992-139; 1992 Tax Ct. Memo LEXIS 202; 63 T.C.M. (CCH) 2317; T.C.M. (RIA) 92139; March 9, 1992, Filed *202 Decision will be entered for respondent. Richard Peter Paul, pro se. Philip G. Owens, for respondent. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: [1] Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
6661
1984
$ 76,252
$ 19,063
$ 3,813
50% of the
$ 4,798
$ 19,063
interest due
on$ 76,252
1985
45,360
11,340
2,268
50% of the
2,599
--
interest due
on $ 45,360
Respondent also determined that petitioner is subject to self-employment taxes pursuant to section 1401[2] for 1984 and 1985 in the respective amounts of $ 4,271 and $ 4,673. *203 The issues for decision are: (1) Whether petitioner Richard Peter Paul had unreported income from the illegal sale of drugs for 1984 and 1985 in the respective amounts of $ 253,732 and $ 163,723; (2) whether petitioner is liable for self-employment taxes for 1984 and 1985; (3) whether petitioner is liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (a)(2) for 1984 and 1985; (4) whether petitioner is liable for the addition to tax for substantial understatement pursuant to section 6661 for 1984; (5) whether petitioner is liable for the additions to tax for failure to timely file Federal income tax returns pursuant to section 6651(a)(1) for 1984 and 1985; and (6) whether petitioner is liable for the additions to tax for failure to make estimated tax payments pursuant to section 6654(a) for 1984 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner was incarcerated at the Federal Correctional Institution in Ashland, Kentucky, at the time he filed his petition in this case. He filed a delinquent Federal income tax return *204 for 1984 on January 2, 1986. He did not file a Federal income tax return for 1985. The deficiencies at issue are based on respondent's determination that petitioner failed to report income received from his cocaine trafficking activity during 1984 and 1985. Petitioner's Federal income tax return for 1984 did not report any income from the sale of cocaine. Indictment and Guilty Plea
Petitioner was indicted by a grand jury on February 19, 1986, in the United States District Court for the Eastern District of Wisconsin. [3] He was charged with eight counts of various Federal drug violations. On April 29, 1986, he pled guilty to Counts One and Five of the indictment. Count One charged petitioner with conspiring to distribute cocaine between January 1, 1983, and December 31, 1985. Count Five charged him with possession with intent to distribute two kilograms of a mixture containing cocaine on or about October 15, 1984. The remaining counts [4] were dismissed pursuant to the plea agreement. Petitioner was sentenced to consecutive prison terms of 12 years on Count One and six years on Count Five. *205 On May 20, 1988, petitioner filed a petition with the District Court for the Eastern District of Wisconsin seeking to set aside his guilty pleas and prison sentences. The District Court denied his petition in an unpublished order on September 29, 1988, and the Court of Appeals for the Seventh Circuit affirmed the order per curiam in an unpublished order dated December 4, 1990. At the time of the trial in this case, petitioner was serving his sentence at the Federal Correctional Institution in Ashland, Kentucky. Criminal Investigation
Petitioner's indictment resulted from a lengthy investigation begun in June 1984, by the City of Milwaukee Police Department, and joined in July 1985, by the City of New Berlin Police Department and the Drug Enforcement Administration. In October 1985, the Waukesha County Sheriff's Department entered the investigation. [5]
*206 Investigators originally learned of petitioner's cocaine sales from an informant. Over a period of time, several informants provided the police with evidence that they had purchased cocaine from petitioner and had specific knowledge of his drug trafficking during 1984 and 1985. The investigators corroborated this information by way of subpoenaed records of various companies which substantiated significant portions of the informants' statements. Cocaine Sales
In 1982 or 1983, petitioner began buying and selling small amounts of cocaine in Milwaukee. He later increased the quantities until he was dealing in pound and multi-kilo units. He purchased the cocaine from various suppliers in Florida and resold it, primarily from his home. He later became a large-scale drug dealer. During 1984 and 1985, the retail price of a gram of cocaine in Milwaukee was $ 100, while an ounce of cocaine was $ 2,200. There are 16 ounces in a pound and approximately 2.2 pounds in a kilo. The average selling price of a pound of cocaine to a wholesale dealer in Milwaukee ranged from approximately $ 16,000 to $ 20,000. The price varied depending on the quality of the cocaine. The average cost *207 of a kilo of cocaine to a distributor was $ 35,500. One of petitioner's customers was Randy R. Bliffert. [6] He began purchasing cocaine from petitioner in 1983. The first purchase occurred when Bliffert offered to exchange a kerosene heater for two grams of cocaine. Thereafter, between November 1983 and early 1985, petitioner provided Bliffert with one or two ounces of cocaine every week or two. At first Bliffert resold the cocaine he purchased from petitioner. He later began using it himself. Bliffert would pick up the cocaine at petitioner's house, and generally pay for it in cash sometime later. Petitioner had large quantities of cocaine and was selling it to individuals other than Bliffert. On one occasion, in January or February of 1984, petitioner gave Bliffert $ 5,500 to purchase cocaine on his behalf. Bliffert went to Florida, bought a *208 quantity of cocaine, and delivered it to petitioner. In payment for his "services", petitioner gave Bliffert a few grams of cocaine and decreased his cocaine debt. However, petitioner was dissatisfied with the quality of the cocaine that Bliffert delivered. As a result, petitioner thereafter purchased his cocaine from other sources. Bliffert fell behind in his payments to petitioner for cocaine. By mid-1984, he owed petitioner approximately $ 10,000. Thus, in April 1984, Bliffert transferred to petitioner the title to his 1984 BMW. It was Bliffert's understanding that petitioner would use the car as collateral until Bliffert repaid the full amount of his debt. The fair market value of the BMW at the time of transfer was approximately $ 10,500. By October 1984, Bliffert became further indebted to petitioner. He was then forced to give petitioner jewelry appraised at $ 10,000 in partial payment of his debt. In connection with this transfer, he hoped that petitioner would return his BMW. Petitioner, however, kept the BMW as well as the jewelry. In the beginning of March 1985, petitioner became aware that the City of Milwaukee Police Department was planning to search his house *209 for cocaine, drug paraphernalia, and money. He thus "cleaned the house up" and removed his stored cocaine and related paraphernalia from his house. On March 25, 1985, the Milwaukee Police Department (with approximately 10 officers) executed a search warrant at petitioner's residence. During the search, a safe containing title to the 1984 BMW (signed over to petitioner by Bliffert), two appraisals for diamonds (totaling $ 19,000), and rare coins were found. Outside the house, the police discovered wet plastic bags containing residue of a cocaine cutting agent, mannitol or mannite. [7] They did not, however, find any cocaine or paraphernalia. Shortly after the search, Bliffert, his girlfriend, and her two children moved into petitioner's residence. (They had been evicted from their home.) Petitioner continued to supply Bliffert *210 with cocaine during the time they lived in the same house. James Earl Van Skyhock was another of petitioner's customers. [8] He purchased cocaine from petitioner beginning in 1984. In 1985, petitioner became Van Skyhock's main supplier. Van Skyhock personally used a portion of the cocaine he bought and he resold the remainder. Over time, he also became indebted to petitioner. Following the search of his house by police in March 1985, petitioner periodically delivered quantities of cocaine to Van Skyhock for storage. Van Skyhock kept the cocaine in his house and in a bank safe deposit box. On July 12, 1985, petitioner reported to the police in New Berlin, Wisconsin, that he had been robbed of a van and an attache case bearing his initials containing $ 5,000 in cash. Police from nearby Wauwatosa found the attache case and van, and arrested Van Skyhock and others in connection with the robbery. The attache *211 case contained $ 16,940 in cash, as well as 83 grams of cocaine. The police also recovered a combination safe from petitioner's van. The safe contained 33 grams of marijuana, jewelry appraised at $ 40,000, and $ 33,000 in cash. Petitioner admitted that the items in the safe were his. The police believed that these items, as well as the contents of petitioner's attache case, convincingly linked petitioner to the sale of cocaine. Following this incident, the investigation of petitioner's cocaine trafficking activities continued, and in February 1986, culminated in the above-described indictment. Van Skyhock and others were also indicted. Notice of Deficiency
On February 29, 1988, the District Director of Internal Revenue in Milwaukee, Wisconsin, mailed petitioner a report proposing adjustments (30-day letter) concerning his 1984 and 1985 taxable years. The report concluded that petitioner had unreported income from the sale of cocaine during 1984 and 1985. Respondent mailed her statutory notice of deficiency to petitioner on September 13, 1988. Petitioner did not maintain books or records of his drug sales for 1984 or 1985. Accordingly, respondent reconstructed petitioner's *212 income to determine his tax liability. Respondent determined petitioner's illegal drug income, based on the indictment dated February 19, 1986, and Drug Enforcement Agency records, as follows: 1984
1985
Total Cocaine Possessed
2.455 kilograms
1.583 kilograms
Average 1/3 Cut [9]
x 1.333
x 1.333
Available for Sale
3.27 kilograms
2.11 kilograms
Average Selling Price
Per Kilogram
x $ 77,594.00
x $ 77,594.00
Total Sales
$ 253,732.38
$ 163,723.34
Cost of Goods Sold [10]
($ 87,152.50)
($ 56,196.50)
Gross Profit
$ 166,579.88
$ 107,526.84
These calculations are set forth in respondent's 30-day letter, which formed the basis for respondent's notice of deficiency. OPINION Issue 1. *213 Unreported Drug Income
We must first decide whether petitioner had unreported income in the amounts determined by respondent from the illegal sale of cocaine for 1984 and 1985. Respondent's deficiency determination is presumptively correct and the burden of proof is on petitioner to show that it is wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Generally, we will not look behind a notice to examine the evidence used in making the deficiency determination. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). In this context we have observed that "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied on improper evidence". Rosano v. Commissioner, 46 T.C. 681, 687 (1966). Nevertheless, with regard to unreported illegal income, the courts have recognized a limited exception to the general rule where the taxpayer demonstrates that the Commissioner's determination is arbitrary or erroneous. *214 In such a situation the burden of going forward with the evidence shifts to the Commissioner. Jones v. Commissioner, 903 F.2d 1301, 1304 (10th Cir. 1990), affg. in part (on this issue) and revg. in part T.C. Memo. 1988-373, opinion on remand T.C. Memo. 1991-160. "Proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." Jones v. Commissioner, supra at 1304 (quoting United States v. Janis, 428 U.S. 433 (1976)). Petitioner contends that the Government used perjured and inadmissible hearsay statements to arrest and convict him of illegal drug trafficking. At the trial of this case, petitioner denied that he in fact sold cocaine. In effect, he argues that respondent's determination of his tax liability is arbitrary and erroneous. Respondent presented substantive evidence linking petitioner to the tax-generating activity which forms the basis of the deficiency determination, i.e., the sale of cocaine. We found the testimony of the law enforcement investigators to be persuasive and credible, establishing petitioner's connection to the sale of large quantities *215 of cocaine during 1984 and 1985. Furthermore, Bliffert and Van Skyhock testified that they purchased cocaine from petitioner during the years in issue and were intimately aware of his drug trafficking activities. In addition, petitioner's indictment and subsequent guilty plea to conspiring to distribute cocaine between 1983 and 1985, and to possession with intent to distribute two kilograms of a mixture containing cocaine on or about October 15, 1984, also establish his connection to the sale of cocaine. In sum, we hold that this evidence is sufficient to place on petitioner the burden of going forward as well as the burden of proof to show the incorrectness of the deficiency determination. Petzoldt v. Commissioner, 92 T.C. 661, 691 (1989); Shriver v. Commissioner, 85 T.C. 1, 4 (1985). Petitioner failed to carry this burden. Other than his attempts at trial to distance himself from any involvement with cocaine trafficking, he offered no evidence to prove that respondent's determination was erroneous. He testified that his accumulation of wealth resulted from savings over the years rather than from cocaine trafficking. We are not required *216 to accept his self-serving testimony, particularly in the absence of corroborating evidence. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Urban Redevelopment Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960). We reject his self-serving testimony. He did not offer any convincing proof that he was not involved in drug trafficking in 1984 and 1985. Neither did he attempt to suggest a more accurate estimate of his drug-related income. In short, he has not satisfied his burden of proof. The record establishes that during 1984 and 1985 petitioner was extensively engaged in illegal cocaine trafficking and that he received substantial income from it. The evidence placing petitioner in the illegal drug trade contradicts and outweighs his testimony. His indictment and subsequent guilty plea in connection with the cocaine sales further support respondent's deficiency determination. Thus, it is clear that respondent's determination was not arbitrary or lacking in foundation. See Shriver v. Commissioner, supra at 3-4. *217 Petitioner has also failed to prove that respondent's determination was erroneous. Section 6001 requires all taxpayers to maintain sufficient records to determine their correct tax liabilities. When a taxpayer fails to keep adequate records, and has unreported income from an illegal enterprise, the Commissioner is authorized to determine the existence and amount of the taxpayer's income by any method that clearly reflects income. Sec. 446(b); United States v. Johnson, 319 U.S. 503, 517-518 (1943); Jackson v. Commissioner, 73 T.C. 394, 403 (1979); Harper v. Commissioner, 54 T.C. 1121 (1970). The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). The Commissioner is given some latitude in determining which method of reconstruction to apply in cases involving an illegal activity where the taxpayer has neither filed a return nor maintained any records. Petzoldt v. Commissioner, supra at 693; Jackson v. Commissioner, supra at 403. *218 The determined deficiencies for 1984 and 1985 were based on estimates of petitioner's gross receipts which, in turn, were calculated based on petitioner's indictment [11] and Drug Enforcement Agency records. We hold that respondent's determination of petitioner's cost basis for cocaine and his sales in 1984 and 1985 were reasonable, especially taking into consideration his lack of adequate books and records. United States v. Johnson, supra at 517-518; Jackson v. Commissioner, supra at 403. We further hold that the statutory notice of deficiency was neither arbitrary nor excessive in view of the strong and substantial evidence linking petitioner to the illegal cocaine sales. See Jones v. Commissioner, T.C. Memo. 1988-373, affd. in part (on this issue) and revd. in part 903 F.2d 1301 (10th Cir. 1990), opinion on remand T.C. Memo. 1991-160. We therefore sustain respondent's determination as to petitioner's unreported taxable income for 1984 and 1985. *219 Issue 2. Self-Employment Tax
A self-employment tax is imposed on income earned from self-employment. Sec. 1401. Respondent determined that petitioner was liable for self-employment taxes for 1984 and 1985 in the respective amounts of $ 4,271 and $ 4,673. Again, petitioner has the burden of proving that the determination is erroneous. Since petitioner failed to present any proof on this issue, and in light of our conclusions with respect to the first issue, we hold that petitioner is liable for the self-employment taxes. Issue 3. Section 6653(a)(1) and (2) Additions to Tax
Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct and petitioner has the burden *220 of proving that it is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). The facts show that petitioner was negligent in 1984 and 1985. First, he failed to report any of his cocaine-related income for those years. Second, he failed to maintain books and records of the income, as required by section 6001 and section 1.6001-1, Income Tax Regs. See Schroeder v. Commissioner, supra at 34. The fact that he was engaged in an illegal activity does not exempt him from the reporting and record keeping requirements of the Code. See, e.g., Guercio v. Commissioner, T.C. Memo. 1982-28. Since petitioner failed to show that any part of the deficiency was not due to negligence or intentional disregard of the rules, we hold that he is liable for the additions to tax pursuant to section 6653(a)(1) and (2). Issue 4. Section 6661(a) Addition to Tax
Section 6661(a) provides for an addition to tax if there is a substantial understatement of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment *221 attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-502 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioner's understatement for 1984 was neither based on substantial authority nor adequately disclosed on the return or in a statement attached to the return. The understatement was also "substantial". We therefore sustain respondent's determination pursuant to section 6661. Issue 5. Section 6651(a)(1) Additions to Tax
Section 6651(a)(1) imposes an addition to tax for failure to timely file a return (determined with regard to any extension of time for filing) at the rate of 5 percent of the amount of tax due per month up to 25 percent in the aggregate, unless such failure is due to reasonable cause and not due to willful neglect. The term *222 "willful neglect" means a conscious, intentional or reckless indifference. United States v. Boyle, 469 U.S. 241 (1985). The regulations define "reasonable cause" sufficient to excuse the failure to file a return as the exercise of "ordinary business care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Whether the late filing of an income tax return is due to reasonable cause or willful neglect is a question of fact. Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir. 1964), affg. on this issue 37 T.C. 962 (1962). Petitioner delinquently filed his 1984 Federal income tax return. He did not attempt to prove reasonable cause for his failure to timely file the 1984 return. Thus, we sustain respondent's determination that petitioner is liable for the section 6651(a)(1) addition to tax for 1984. By filing his 1984 Federal income tax return (even though untimely), petitioner demonstrated that he was aware of his duty to file a return for 1985. He did not present any explanation as to why he did not file a 1985 return. Consequently, he is also liable for the section 6651(a)(1) addition to tax for 1985. Issue *223 6. Section 6654(a) Additions to Tax
Section 6654(a) imposes an addition to tax in the case of any underpayment of estimated tax by an individual. Petitioner has the burden of proving error in respondent's determination. Rule 142(a). He failed to present any evidence on this issue. Accordingly, we sustain respondent's determination that petitioner is liable for the section 6654(a) additions to tax for 1984 and 1985. Decision will be entered for respondent.
Footnotes
1. By order of the Chief Judge dated January 2, 1992, this case was reassigned to Judge Dawson↩. 2. Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner moved at trial to submit the grand jury transcripts into evidence. Respondent did not object. As a result, the transcripts were accepted by the Court. We have not, however, relied upon the grand jury testimony in our Findings of Fact. Testimony before a grand jury is, in general, hearsay; thus it cannot be used to prove the truth of the matter asserted. Fed. R. Evid. 801(c), 802. Four witnesses testified before the grand jury but were unavailable at the trial of this case. Their grand jury testimony is not qualified as an exception to the hearsay rule under Federal Rules of Evidence 804(b)(1), because they were not subject to cross-examination. See, e.g., Young v. United States, 406 F.2d 960 (D.C. Cir. 1968); Estate of Temple v. Commissioner, 65 T.C. 776 (1976). Neither did the grand jury transcript of one witness, Randy R. Bliffert, who testified both before the grand jury and before us, serve to impeach his credibility at trial. See Fed. R. Evid. 801(d)(1)↩. 4. Count Two charged that on or about August 31, 1984, petitioner traveled in interstate commerce from Florida to Milwaukee, Wisconsin, with intent to promote, carry on, and facilitate the carrying on of an unlawful activity, a business enterprise involving cocaine. Count Three charged that on or about August 31, 1984, at or around Milwaukee, Wisconsin, petitioner did knowingly, intentionally and unlawfully possess with intent to distribute approximately 16 ounces of a mixture containing cocaine. Count Four charged that on or about October 15, 1984, petitioner traveled in interstate commerce from Florida to Milwaukee, Wisconsin, with intent to promote, carry on and facilitate the carrying on of an unlawful activity, a business enterprise involving cocaine. Count Six charged that on or about April 1, 1985, at or around Muskego, Wisconsin, petitioner did knowingly, intentionally and unlawfully possess with intent to distribute approximatley 1.5 kilgrams of a mixture containing cocaine. Count Seven charged that on or about July 12, 1985, at or around New Berlin, Wisconsin, petitioner did knowingly, intentionally and unlawfully possess with intent to distribute approximately 83 grams of a mixture containing cocaine.↩
5. Investigators from each of these law enforcement agencies testified at the trial of this case. They included: Alan P. Wilke of the City of Milwaukee Police Department, Michael C. Duwe of the City of New Berlin Police Department, Robert J. Hartman of the Drug Enforcement Administration, and William P. Kruziki of the Waukesha County Sheriff's Department.↩
6. Bliffert became an informant to the City of New Berlin Police Department on July 4, 1985. He testified at the trial concerning his relationship with petitioner.↩
7. Pure cocaine is usually "cut" or diluted by adding adulterants to increase the weight, thus decreasing its potency, and increasing profits on resale. Cocaine is usually cut more than once.↩
8. Van Skyhock was also a witness at the trial herein, and testified about his relationship with petitioner.↩
9. Based on Drug Enforcement Agency records, it was estimated that the cocaine was cut by 1/4 - 1/2 with another substance. ↩
10. Both the "Average Selling Price Per Kilogram" and "Cost of Goods Sold" were based on the above-described average prices of cocaine in the Milwaukee area during 1984 and 1985.↩
11. Respondent's procurement of a copy of an indictment, a public record, and her use thereof in formulating a statutory notice of deficiency is reasonable and proper, and not a violation of rule 6(e) of the Federal Rules of Criminal Procedure. See Bell v. Commissioner, 90 T.C. 878, 904 (1988); Kingsley v. Commissioner, T.C. Memo. 1990-79↩.