UNITED STATES of America, Petitioner,

v.

Wayne R. BROWN, Respondent.

No. MS–1–93–030.

United States District Court,
S.D. Ohio, W.D.

June 4, 1993.

Elizabeth B. Mattingly, Dept. of Justice, Cincinnati, OH, for petitioner.

Wayne R. Brown, pro se.

*ORDER GRANTING PETITION
TO ENFORCE SUMMONS*

SPIEGEL, District Judge.

This matter is before the Court on the Petitioner's Petition to Enforce Internal Revenue Service Summons (doc. 1), the Petitioner's Memorandum in Support of Petition to Enforce Summons (doc. 3), the Respondent's Reply to Summons (doc. 6), and the Petitioner's Response (doc. 8). A hearing was held on this matter on March 12, 1993.

## BACKGROUND

As part of an investigation into the possible tax liability of the Respondent, Revenue Officer R.L. Badgley of the United States Internal Revenue Service ("IRS") issued and served a summons upon the Respondent. The summons required the Respondent to appear and provide documents and testimony reflecting income received during the course of the years 1989, 90, 91. After the Respondent failed to appear, the Petitioner filed its Petition to Enforce Internal Revenue Service Summons, seeking an order of this Court directing the Respondent to show cause why he should not comply with the summons.

The Respondent, a Six Nations Iroquois Confederate Indian of the Mohawk Nation, claims that he is exempt from paying federal income taxes under the Constitution of the United States and various treaties. Because he is exempt from taxation, he argues, he does not have to comply with the subpoena requirements.

In support of his argument, the Respondent cited Article I section 2 of the United states Constitution which states in relevant part,

> [r]epresentatives and direct taxes shall be apportioned among the several states which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of years and excluding Indians not taxed.

The Respondent also refers to other treaties which he claims exempt him form the federal tax laws.

The Government on the other hand claims that statutes of general application such as the Internal Revenue Act ("ACT") apply equally to Indians unless the exemption is clearly expressed in a statute or by the terms of a treaty. The Government maintains, furthermore, that because neither the ACT nor any treaty removes the Respondent from the scope of the federal tax laws, the Respondent must comply with the subpoena and other relevant sections of the ACT.

The Court has considered this matter with great sensitivity for two reasons. First, the Respondent is representing himself *pro se,* and it is well settled that *pro se* pleadings should be construed indulgently. *Williams v. Browman,* 981 F.2d 901, 903 (6th Cir.1992) (per curiam). Second, the Court is well aware of the undeniably sordid relationship between the United States Government and the North American Indians throughout the history of this nation. We have therefore carefully considered this matter in light of the unique history and development of this specialized area of the law.

After thoroughly reviewing the relevant law as interpreted by the United States Supreme Court, we draw the inescapable conclusion that the Respondent in this case is not exempt from the federal income tax laws and regulations. The Respondent therefore must comply with the summons.

## ANALYSIS

■ Prior to the Supreme Court's 1931 decision in *Choteau v. Burnet,* 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931), general acts of Congress did not apply to Indians, "unless so expressed as to clearly manifest an intention to include them." *See Elk v. Wilkins,* 112 U.S. 94, 100, 5 S.Ct. 41, 44, 28 L.Ed. 643 (1884). Citing *Elk v. Wilkins,* the Tenth Circuit in *Blackbird v. Commissioner of Internal Revenue* held that the respondent Indian was exempt from the federal income tax, observing that "[i]t is well established that general Acts of Congress do not apply to Indians, unless so worded as clearly to manifest an intention to include Indians in their operation." 38 F.2d 976, 977 (10th Cir.1930) (citing *Elk,* 112 U.S. 94, 5 S.Ct. 41).

This rule of statutory construction, the Supreme Court noted almost a generation earlier, had "been recognized for over a hundred years, without exception. . . ." *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912). Thus, it had long been held that to apply laws of general application to the Indians, absent explicit language including them, "would be contrary to the almost unbroken policy in dealing with . . . [the] Indian[s]. Whenever they or their interests ha[d] been the subject affected by legislation they ha[d] been named, and their interests specifically dealt with." *Blackbird*, 38 F.2d at 977 (citing *Elk*, 112 U.S. 94, 5 S.Ct. 41).

The Internal Revenue Code states that income tax applies to "every individual" and to "all income from whatever source derived." 26 U.S.C. §§ 1, 61. This clearly makes no specific reference to the Indians. Similarly, the ACT's summons provisions speaks in terms of "any person," with no reference to Indians whatsoever. Thus, under the long standing rule of construction, as one former United States Attorney General observed, because it has never been the practice to legislate for . . . [the Indians] generally, . . . [and because] no specific reference . . . is made in the [Internal Revenue] Acts . . . the Indians [were] not subject to the Federal income tax laws." 34 Ops.Atty.Gen. 439, 444–45 (1925) (opinion of United States Attorney General John G. Sargent).

In 1931, however, the United States Supreme Court, virtually without explanation, did what amounted to an "about-face" on statutory interpretation in the area of American Indian law. In *Choteau v. Burnet*, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931), the Supreme Court held that the Internal Revenue Act, a generally applicable act of Congress, applied to Indians. *Id.* at 694, 697, 51 S.Ct. at 600, 601. The Court stated that because the Internal Revenue Act "does not expressly exempt the sort of income here involved, nor a person having petitioner's status [as an Indian] respecting such income . . ." the act applied to Indians. *Id.* at 694, 51 S.Ct. at 600. The Court therefore, in one sentence, with neither explanation nor citation, eradicated over a hundred years of stat-

utory interpretation requiring explicit *inclusion* of Indians, *see Trapp*, 224 U.S. at 675, 32 S.Ct. at 569, henceforth requiring explicit *exemption* of Indians to free them from the scope of statues of general application. *See Choteau*, 283 U.S. at 693–94, 51 S.Ct. at 599–600; *See also* Jay v. White, Taxing Those They Found Here 53–56 (1972) [hereinafter "White"].

■ Regardless of its reasoning, however, the Supreme Court has spoken with abundant clarity in at least one respect. The prevailing rule by which we are bound is that general acts of Congress, including the Internal Revenue Code, apply to Indians unless a statue or a treaty expressly exempts them. *Fed. Power. Comm. v. Tuscarora Indian Nation*, 362 U.S. 99, 115–16, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960); *Superintendent v. Tax Commissioner*, 295 U.S. 418, 420–421, 55 S.Ct. 820, 821–22, 79 L.Ed. 1517 (1935); *Choteau*, 283 U.S. at 693–94, 51 S.Ct. at 599–600; *Dillon v. United States*, 792 F.2d 849, 852, 853 (8th Cir.1986) *cert. denied, sub nom Cross v. Comm.*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987); *Hoptowit v. C.I.R.*, 709 F.2d 564, 565 (9th Cir.1983); *Jourdain v. C.I.R.*, 617 F.2d 507, 509 (8th Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).

In *Tuscarora Indian Nation*, the petitioner Indians attempted to rely on *Elk v. Wilkins*, cited above, claiming that general acts of Congress did not apply to Indians unless so expressed as to clearly manifest an intention to include them. *Tuscarora Indian Nation*, 362 U.S. 99, 115–16, 80 S.Ct. 543, 552–53, 4 L.Ed.2d 584 (1960). The Supreme Court held that "[h]owever that may have been, it is now well settled by ·many decision of this Court that a general statute in terms applying to all persons includes Indians and their property interests." *Id.* at 116. Therefore, in the absence of a treaty or some other express statutory or constitutional tax exemption, we must find that the Respondent is not exempt from the Internal Revenue Act, including the subpoena requirement under 26 U.S.C. §§ 7402(b), 7604.

■ In support of his argument, the Respondent has argued that the phrase "excluding Indians not taxed" in Article I, section 2

of the United States Constitution, as well as the Fourteenth Amendment, exempts Indians from federal taxation. The phrase, however, is simply part of an apportionment provision designed to determine the number of representatives for each state and to correctly apportion the direct taxes among the states. *See* U.S. Const. art. I, § 2 cl. 3, Fourteenth Amendment § 2; *United States v. Kagama,* 118 U.S. 375, 378, 6 S.Ct. 1109, 1110–11, 30 L.Ed. 228 (1886); *Jourdain v. Comm.,* 71 T.C. 980, 988 (1979), *aff'd,* 617 F.2d 507, 509 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); White at 11; Felix S. Cohen, Handbook of American Indian Law 389 (1982) [hereinafter Cohen].

In apportioning the representatives and direct taxes among the states, "Indians not taxed" were excluded from the count *Kagama,* 118 U.S. at 378, 6 S.Ct. at 1110; *Jourdain,* 71 T.C. at 988; White at 11; Cohen at 388. In fact, at the time the Constitution was adopted, as the phrase acknowledges, some Indians were taxed, while others were not. *United States v. Willie,* 941 F.2d 1384, 1400 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992); *Dillon v. United States,* 792 F.2d 849, 852 n. 1 (8th Cir.1986) *cert. denied, sub nom. Cross v. Comm.,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987); *see Elk v. Wilkins,* 112 U.S. 94, 112, 5 S.Ct. 41, 28 L.Ed. 643 (1884) (Harlan, J., dissenting); White, at 11. It is clear, however, that the phrase does not create a general tax exemption for Indians. *Jourdain v. C.I.R.,* 617 F.2d 507, 509 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); Cohen at 389; *See Willie,* 941 F.2d at 1400; *Dillon,* 792 F.2d at 852 n. 1; *Elk,* 112 U.S. at 112, 5 S.Ct. at 50–51 (Harlan, J., dissenting); White, at 11. We are therefore unable to find a tax exemption for the Respondent in the phrase "Indians not taxed."

■ Similarly, the Respondent has made reference to certain treaties which purportedly demand tax exempt status for Indians. Although the Respondent has not specifically referred to any particular treaty in support of his claim of exemption, it appears that the only treaties which could be relevant to this

case are the Six Nations Treaty, 7 Stat. 44 (1794), and the Jay Treaty, 8 Stat. 116 (1794). Nevertheless, unless some language can be found in these treaties which we could reasonably construe as an exemption, the Respondent must comply with the summons, as well as all other sections of the Internal Revenue Code. *See Squire v. Capoeman,* 351 U.S. 1, 6, 76 S.Ct. 611, 615, 100 L.Ed. 883 (1956); *Dillon v. United States,* 792 F.2d 849, 852 (8th Cir.1986); *Hoptowit v. C.I.R.,* 709 F.2d 564, 565 (9th Cir.1983); *Dillon v. United States,* 792 F.2d 849, 852, 853 (8th Cir. 1986) *cert. denied, sub nom., Cross v. Comm.,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987); *Hoptowit v. C.I.R.,* 709 F.2d 564, 565 (9th Cir.1983); *L.O.C. v. I.R.S.,* 658 F.Supp. 1434, 1438 (W.D.Wis.1987), *aff'd,* 845 F.2d 139 (7th Cir.1988); *see Ute Distribution Corp. v. United States,* 938 F.2d 1157, 1162 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2273, 119 L.Ed.2d 200 (1992).

After a careful review of these treaties, we are unable to find any language from which we could reasonably derive an exemption applicable to the Respondent. Taxation is not referred to at all in the Six Nations Treaty, and although there are references to taxes in the Jay Treaty, none implies an exemption from federal income taxes. For example, in the three articles of the Six Nations Treaty, there is no reference to the power of taxation. The treaty deals entirely with its professed objective of "firmly" establishing perpetual "peace and friendship ... between the United States and the Six Nations." Six Nations Treaty, 7 Stat. 44, art. I (1794). Articles II through V discuss the terms of the treaty with respect to the conditions of use and boundaries of Indian land. Sections VI and VII discuss the terms of payment to the Indians as part of the consideration for entering into the treaty, and define the process of dealing with accused violators of the treaty. *Id.* arts. II, III, IV & V.

Article III of the Jay Treaty, however, does discuss taxes both with respect to the Indians and the British. Jay Treaty, 8 Stat. 116, art. III (1794). The reference to taxes, which grants an exemption to Indians importing goods "usual among Indians" such as pelts, could not reasonably be construed to

establish an exemption for federal income tax. The Court, therefore, has found no language in either treaty which we could reasonably construe as establishing a federal income tax exemption applying to the Respondent.

## CONCLUSION

The Court is bound to apply all statutes of general application to American Indians absent an express exemption found in a statute, the Constitution or a treaty. In this case, no statute, treaty, nor the Constitution grants such an exemption to the federal income tax laws. Consequently, the Court must find that the Respondent is not exempt from the provisions of the Internal Revenue Act, including the summons provisions.

Accordingly, we hereby order the respondent to comply with the summons by appearing at a time and place provided by the Internal Revenue Service, and by producing the documents, records and other data as well as the testimony required by the summons.

SO ORDERED.